TAYLOR, *Appellant*, v. CROCKETT.

·Division One, June 19, 1894.

1. **Supreme Court Practice:** EQUITY FINDINGS: CONFLICT OF EVIDENCE. In cases in equity the supreme court on appeal will review the facts; but where the result turns upon the credibility of conflicting evidence, the court is disposed to give great weight to the finding of the trial judge.

2. **Deed:** FRAUD: UNDUE INFLUENCE. The consideration of a deed is open to explanation upon an issue of fraud and undue influence in obtaining it.

3. ——: CONSIDERATION: EQUITY. A promise to pay taxes and to contribute to the support of the grantor is held to be a sufficient consideration in equity to support the conveyance of land in dispute in this case.

4. ——: FRAUD AND UNDUE INFLUENCE: BURDEN OF PROOF. In a suit to set aside a deed, as obtained by undue influence and fraud, the burden of proof is on the party charging such misconduct. The evidence in the present case reviewed and held insufficient to establish that charge.

*Appeal from Jackson Circuit Court.*—HON. JOHN W. HENRY, Judge.

AFFIRMED.

*Kagy & Bremermann* for appellant.

(1) This action is brought to set aside an alleged conveyance on the ground of fraud and undue influence. The facts shown by the evidence entitle plaintiff to the relief claimed. *Yosti v. Langhorn*, 49 Mo. 594; *Garvin's Adm'r v. Williams*, 44 Mo. 465; *Cadwallader v. West*, 48 Mo. 483; *McClure v. Lewis*, 72 Mo. 314; *Hall v. Knappenberger*, 97 Mo. 509; *Millie v. Sullivan*, 11 Mo. App. 419; *Dickson v. Kempinsky*, 96

Taylor v. Crockett.

Mo. 254; *Card v. Lackland*, 49 Mo. 451; *Davis v. Strange*, Book 8, L. R. A., 261 and note. (2) The defense was that the conveyance was for a consideration. The claim made at the trial was that it was a gift. Equity will not permit a party to take a conveyance for a consideration and afterwards set it up as a gift. If it was a gift, the burden is on defendant to show it. *Cadwallader v. West*, 48 Mo. 483; Snell's Principles of Equity, p. 412, bottom; 8 Am. and Eng. Encyclopedia of Law, p. 1310 (note). (3) The consideration named in the deed is $100, while the undisputed evidence shows the premises worth $1,500. It was so inadequate as to "shock the moral conscience." Even the $100 was not paid. *Nelson v. Betts*, 21 Mo. App. 219; *Dickson v. Kempinsky*, 96 Mo. 252; 2 Pomeroy's Equity, secs. 927, 928. (4) Being in equity, the case is tried *de novo*, and here we present a complete record, and respectfully pray a reversal or decree, as we may be entitled.

*Traber, Vandeveer & McNeil* for respondent.

(1) The decision was for the right party. *Shinnabarger v. Shelton*, 41 Mo. App. 147; *Gay v. Gillilan*, 92 Mo. 250; *Webb v. Darby*, 94 Mo. 621; *Chapman v. McIlwrath*, 77 Mo. 38. (2) It is not denied that Adam Taylor was of sound mind and disposing memory at the time of making his will on September 8, 1888, and that was the day when the deed to respondent was made, and "neither old age, disease, mental weakness, inadequacy of consideration nor confidential relations are *per se* independent and substantial grounds upon which courts of equity will interfere to relieve a party from a contract voluntarily entered into for a valuable consideration; nor will the mere existence of any one or all of these afford sufficient cause

for avoiding such a contract." *Dickson v. Kempinsky*, 96 Mo. 252.    (3) The consideration clause in a deed is always open to explanation. *Altringer v. Capeheart*, 68 Mo. 441; *Fontaine v. Boatmen's Sav. Inst.*, 57 Mo. 553; *Miller v. McCoy*, 50 Mo. 214.    (4) Respondent fully complied with her part of the agreement, not only by paying taxes and assisting the Taylors before the deed was made, but also afterwards; but even had she failed to assist them afterwards, it would not entitle appellant to recover in this cause.    2 Devlin on Deeds, sec. 827.    (5) The trial court found in favor of defendant and this finding should be conclusive against the plaintiff, unless it be made to appear that said finding was not sustained by the evidence.    The appellate courts will defer, to same extent, at least, to the trial courts in their findings on matters of fact. *Chapman v. McIlwrath*, 77 Mo. 38; *Smith v. Allen*, 86 Mo. 178. (6) Respondent was not permitted to testify upon the trial, though appellant was, and notwithstanding this, the evidence clearly sustains the defense, and the judgment was for the right party.

BARCLAY, J.—Plaintiff brought this suit to set aside a conveyance of certain land in Kansas City, Missouri.

The deed attacked was made, September 8, 1888, by plaintiff, Mary Taylor, and her husband, Adam Taylor (now deceased), to the defendant.

The plaintiff's charge is that the deed was obtained by fraud, undue influence and imposition upon the grantors, and without a full understanding of its nature and meaning.    This charge is denied by defendant.    Her answer sets up the facts mentioned later in this opinion as her defense.

Upon these facts plaintiff joined issue by a reply.

The cause was tried by the court (Judge HENRY).

A finding and decree for the defendant ensued. Plaintiff appealed.

As this is a case of equitable cognizance we have reviewed the facts fully, and conclude that the learned trial judge was entirely right in the judgment he pronounced.

The testimony establishes certain facts beyond controversy. It may be well to state them, separately from the conflicting evidence on other phases of the case.

Adam and Mary Taylor were husband and wife. In 1880 they acquired a piece of land in Kansas City, taking the title to both as grantees. The lot had a frontage of twenty-five feet on Lydia avenue and ran thence eastward, of even width, about one hundred and sixty feet to Grove street.

September 8, 1888, plaintiff and Adam Taylor executed the deed in controversy to defendant, the sister of Adam. It was recorded, November 3, 1888. It purported to convey the eastern portion of said lot to a depth of ninety-five feet from Grove street, for the recited consideration of $100. It was duly acknowledged by both grantors, and no question is raised as to its formal sufficiency.

Both grantors signed by means of marks.

Adam Taylor was then about eighty years of age, and was in feeble health; but it is not claimed that he was mentally incapable of contracting. On the contrary, plaintiff asserts the validity of a will made by him on the same day, and claims title under that will. By the will he devised and bequeathed to Mary all his property, real and personal.

This will was admitted to probate in due form, at plaintiff's instance, September 30, 1889, in Jackson county, and is recorded there.

The rest of the case is composed of very conflict-

ing accounts of the making of the deed, and of the facts leading up to it.

The plaintiff denied ever having executed or acknowledged it, or having authorized anyone to sign it for her.

She asserts that defendant never paid anything to Adam or herself as a consideration therefor. She admitted that defendant put a house on the land and had promised to take care of the old man; but asserted that defendant had never given him a cent for it. She declared that Adam wept when he learned that the land stood in defendant's name on the tax list.

She admitted that she had put the will in a trunk, and had kept it.

We do not undertake to give all the details of the evidence. A mere outline will be sufficient for the purposes of this appeal.

Plaintiff's son, by a former marriage, testified in her behalf. He corroborated his mother on the facts that she had originally furnished the consideration for the purchase of the land; that Adam had no means, was helpless and an object of charity, in his latter days; that Adam was surprised on learning that the land was on the tax list as defendant's; that defendant then said "she didn't do it;" and that the truth about the title was discovered after Adam died, when plaintiff tried to borrow money on the land to pay the funeral expenses of her husband.

Two other witnesses testified, on the part of plaintiff, touching an interview between Adam and the defendant, when the latter said she had "never bothered Adam's business, and hadn't been to the court house at all; never changed his deed," etc.

This is the substance of plaintiff's case.

On the side of defendant, the court excluded her

as a witness, even in regard to the alleged conversations by her with living witnesses, who had testified to such conversations.

We need not examine into the correctness of that ruling as defendant did not appeal.

The defendant's daughter, Sallie Crockett, a woman about twenty-four years of age, testified that she and her mother came to Kansas City about the year 1886, and shortly afterward found Adam Taylor. The Crocketts intended to leave the city to go west, but Adam desired them to stay and to assist in supporting him and in paying his taxes, offering in return to give them a place on his lot. Sallie was the chief support of her mother. She declined to agree to the proposed arrangement unless plaintiff and Adam would give her mother a deed to that part of the land they were to live on, so it would be certainly hers. Finally, after many long talks over the matter, that condition was agreed to.

The plaintiff took part in these negotiations and fully assented to the final agreement. Sallie then engaged an attorney, who came to the house and drew the deed now in dispute.

The plaintiff at that time produced the older deed to her and her husband. From that, the attorney was able to compose a description of the east part of the original lot, as it now appears in the deed to defendant.

Plaintiff also pointed out to the attorney how the land was to be divided, and seemed greatly pleased at the bargain. The will of Adam Taylor was also drawn and executed at the same time, and plaintiff took charge of it.

All this occurred a little more than a year before Adam died.

Defendant went at once into possession of the land, with the full knowledge and consent of plaintiff

and her husband. She put two houses on it, fenced it, and has lived upon it ever since.

Sallie, on behalf of her mother, paid the taxes, as shown by four several tax receipts, produced at the trial (representing a total payment of $55.90), and assisted in the support of the Taylors to the time of Adam's death. Until then, there was no disagreement between plaintiff and defendant. On the contrary their relations were entirely harmonious.

The plaintiff went with Sallie when these tax payments occurred, and knew of the improvements as they were made.

Sallie's account of the making of the instrument was fully sustained by the testimony of the attorney who drew the deed and took the acknowledgments of the grantors. He testified positively that they fully understood the transaction; that he carefully explained it to them; that plaintiff expressed herself as pleased with the arrangement, and that the true consideration was the agreement, already described, namely: to assist Adam Taylor in the matter of paying his taxes, and to contribute, as defendant was able, towards his support.

Another witness, a nephew of defendant, corroborated Sallie's testimony, in regard to the consent of plaintiff to the defendant's moving upon the land; and as to Adam's statement that he was going to give defendant a home on the property.

The credibility of the very conflicting accounts of the principal transaction is the chief matter for determination in this controversy. On that point we would be disposed to give great weight to the finding of the learned trial judge, a jurist of great experience and knowledge. He had the advantage of seeing the various witnesses. But we have also examined the evidence with care, and are convinced that the decided preponderance, in respect of credibility, is with defendant.

The plaintiff's story is incoherent, rambling and unsatisfactory. Her denials are somewhat too sweeping to be trustworthy, while the evidence for defendant furnishes a reasonable and natural account of the transaction.

That defendant's daughter paid $55.90 for general and special taxes, beginning with a payment, January 26, 1889, of $42 for grading Nineteenth street, the tax receipts prove.

The testimony of the attorney who was present when the deed was executed, and who was not shown to have any interest, other than a professional one, in the controversy, completely refutes the plaintiff's statements concerning the circumstances of its execution.

The fact that no money was paid when the deed passed is immaterial.

The consideration of $100, therein cited, was open to explanation. The promise to pay taxes and to assist in supporting Adam was a sufficient consideration for the conveyance, in equity; while, at law, none was necessary to sustain the deed as an executed contract, if honestly obtained.

The burden of proof was upon plaintiff to show some fraud or other facts invalidating the deed; and we think she has failed to discharge herself of that burden.

The case, however, does not appear to call for further comment.

It is enough to say, in conclusion, that we are satisfied that the decree of the circuit court was right and should be affirmed. It is so ordered. BLACK, C. J., and BRACE and MACFARLANE, JJ., concur.