584 So.2d 733 (1991)
Raymond R. SMALLWOOD
v.
STATE of Mississippi.
No. 07-KA-59330.
Supreme Court of Mississippi.
July 3, 1991.
*734 B. Brennan Horan, Horn Lake, for appellant.
Mike C. Moore, Atty. Gen., Leyser Q. Morris, Sp. Ass't Atty. Gen., Jackson, for appellee.
Before HAWKINS, P.J., and PITTMAN and BANKS, JJ.
PITTMAN, Justice, for the court:
Raymond Smallwood was indicted by the Grand Jury of DeSoto County for perjury and conspiracy to commit perjury. Smallwood was convicted on both counts and sentenced to five (5) years on the conspiracy count and ten (10) years on the perjury count, with the sentences to be served consecutively, and was taxed with all court costs. Smallwood appeals, assigning ten (10) errors. Because we find that the evidence was insufficient to support a conviction of perjury, we reverse and render on that count, but affirm the conviction of conspiracy.

I.
On November 4, 1986, Raymond Smallwood, his daughter Vicki, and Donna McCluskey shared an apartment at 9190 Lock Lomond in Southaven, Mississippi. Donna left the apartment for work that morning at around 7:30 or 8:00 a.m. Vicki arrived at the apartment around 8:30 a.m. She had been up the entire previous night with Tracy Robinson, a sixteen year old friend. Tracy's husband had recently died. At around 9:00 a.m. Tracy called, and came over to the apartment at around 9:30, bringing her four month old son, Anthony. At some point that morning Vicki and Tracy left the apartment to pick up Tracy's brother from the dentist and take him to school, and also to get some cigarettes and coffee. They were gone from the apartment for 30-45 minutes. The girls left Anthony with Raymond Smallwood, who was still in bed. After the girls returned, Vicki sat at the table with Raymond, who was drinking the coffee the girls had brought him. Tracy went to sleep in Vicki and Donna's bedroom. Raymond then left to go visit a friend, Gary Glover, also known as "Mississippi". Vicki washed clothes, watched some television, and took a shower. Anthony still remained in Ray's bedroom. Vicki did not check on the baby at this time.
Donna arrived home early from work that day, at approximately 3:30 p.m. Donna and Vicki went into Raymond's bedroom to check on some dirty clothes, and both noticed that Anthony was pale and did not appear to be breathing. Donna wanted to wake Tracy up at this time, but Vicki was afraid to because of how upset Tracy had *735 been that morning. Vicki called Gary Glover's house, but was too upset to say anything. Donna informed Gary and Raymond of the situation and they drove over to Lock Lomond. They arrived, checked the baby's condition, and then left.
After Gary and Raymond had left, Donna called the police and the paramedics. Billy Ray Sanders, a sergeant with the Southaven Police Department, received a D.O.A. call at 3:46 p.m. on November 4 and proceeded to 9190 Lock Lomond. When Sanders arrived approximately two minutes later he found an infant lying motionless, not breathing, on a bed in one of the bedrooms. Vicki Smallwood and Donna McCluskey were in the living room. Tracy Robinson was in the second bedroom asleep. Emergency medical personnel had already arrived. Sanders spoke to Smallwood and McCluskey, and learned that Raymond Smallwood had been at the apartment earlier in the day, and had then gone to the hospital. Sanders spoke to one of the investigators en route to the hospital, informing him that Smallwood needed to be questioned if the investigator could locate him.
Raymond Smallwood returned to the Lock Lomond apartment that evening after the police and medical personnel had left, around 6:00 p.m., and then left for the hospital.
Sanders eventually questioned Smallwood at about 6:30 that evening at the police station. Sanders asked Smallwood for a narrative of his actions for that day, and Smallwood complied, with Sanders writing down the statement. The statement provided, in pertinent part, that Smallwood took the following steps once he was informed by Donna McCluskey that Anthony Robinson might be dead:
I told her to call an ambulance and of course when I got there the ambulance was gone this was around 3:00 or 3:30. I went into the Apt. and I ask Donna and Vicki where Tracy was and Donna called the E.R. of Meth. Hospital So., they told her she was there. This was around 3:30 or 4:00. I left and went to the hospital to see her. She walked outside she was crying of course, I was crying to then the Police came out there and ask who I was then they said they wanted to talk to me.
On December 9, 1986, Raymond Smallwood, his daughter Vicki and Donna McCluskey testified before the DeSoto County Grand Jury concerning the death of Anthony Robinson. On July 15, 1987, Raymond Smallwood, Vicki Smallwood and Donna McCluskey were indicted by the same grand jury for perjury and conspiracy to commit perjury. Vicki and Donna agreed to testify for the prosecution in exchange for having the charges against them remanded. It appears from this record that no one was ever indicted in connection with the death of Anthony Robinson.
Raymond Smallwood filed a demurrer to the indictment, and a motion to quash the indictment. Among the objections contained in the demurrer was that the indictment "fail[ed] to state the identity or substance of the issue, or point of inquiry, in the cause in which perjury is alleged to have been committed," and that it "fail[ed] to allege that the words which constituted the alleged perjury were material to any issue of the Grand Jury Proceedings during which they were allegedly uttered, not cure this omission by stating facts clearly showing their materiality." The motion to quash was based on the fact that the same grand jurors who returned the indictment were the jurors before whom the alleged perjury occurred.
The trial in this cause was held on February 15, 16 and 17, 1988. Before trial, the court conducted a hearing on the motion to quash the indictment and the demurrer to the indictment. The motion to quash and the demurrer were denied.

II.
Count 2 of the indictment in question charged Raymond Smallwood with perjury. The elements of perjury are provided in Miss. Code Ann. § 97-9-59 (1972):
Every person who shall willfully and corruptly swear, testify, or affirm falsely to any material matter under any oath, affirmation, or declaration legally administered *736 in any matter, cause, or proceeding pending in any court of law or equity, or before any officer thereof, or in any case where an oath or affirmation is required by law or is necessary for the prosecution or defense of any private right or for the ends of public justice, or in any matter or proceeding before any tribunal or officer created by the Constitution or by law, or where any oath may be lawfully required by any judicial, executive, or administrative officer, shall be guilty of perjury, and shall not thereafter be received as a witness to be sworn in any matter or cause whatever, until the judgment against him be reversed.
Count 2 of the indictment stated:
That RAYMOND R. SMALLWOOD, Late of the County aforesaid, on or about the 9th day of December, in the year of our Lord, 1986, in the County and State aforesaid, and within the jurisdiction of this court, did unlawfully, willfully, and feloniously, knowingly and corruptly commit Perjury, being then and there a witness appearing before the Grand Jury duly summoned, sworn and charged to inquire and serve in and for DeSoto County, Mississippi, by the Circuit Court of DeSoto County, Mississippi, on the 3rd day of November, 1986; and said Grand Jury having been duly convened by Order of the Circuit Court of DeSoto County, Mississippi; and the said RAYMOND R. SMALLWOOD having been then and there duly sworn for and on behalf of Ronald Collins, Foreman of said Grand Jury, as authorized by law, the said RAYMOND R. SMALLWOOD did then and there take his oath and say that the testimony he would give touching the matters being investigated and the answers he would give to the questions asked of him by the Grand Jury would be the truth, the whole truth, and nothing but the truth, so help him God; and the said RAYMOND R. SMALLWOOD being then and there asked material questions concerning the death of Anthony Robinson, an infant child, on November 4, 1986, and further asked material questions concerning the activities of himself, Vicki Cheryl Smallwood and Donna Gayle McCluskey on November 4, 1986, and other relevant dates, and further asked questions concerning the investigation of said death; and the Grand Jury at such time inquiring into and investigating the circumstances surrounding said death and the activities of Vicki Cheryl Smallwood, Donna Gayle McCluskey and Raymond R. Smallwood on November 4, 1986, and other relevant dates and the investigation of said death; and said RAYMOND R. SMALLWOOD having been asked by the Grand Jury to describe his activities on the day of November 4, 1986, in detail and having been specifically asked by the Grand Jury about his activities after he received a certain telephone call from Donna Gayle McCluskey and/or Vicki Cheryl Smallwood on November 4, 1986, concerning the death of Anthony Robinson, the said RAYMOND R. SMALLWOOD willfully, unlawfully, feloniously and corruptly swore that he did not return to his apartment on November 4, 1986, until after the police and ambulance personnel had left the apartment with the body of Anthony Robinson and Tracy Robinson had also left the apartment, when in truth and in fact the said RAYMOND R. SMALLWOOD had returned to his apartment on November 4, 1986, prior to the police and ambulance personnel coming to the apartment and prior to the body of Anthony Robinson being transported and prior to Tracy Robinson having left the apartment, which answers were then and there well known by the said RAYMOND R. SMALLWOOD to be false and incomplete, and not the truth and the whole truth, and said testimony was false, incomplete, untrue, wilful and felonious on the part of RAYMOND R. SMALLWOOD, and the questions and answers referred to above were of material importance to material facts concerning the inquiry of said Grand Jury into the death of Anthony Robinson and related matters as aforesaid, in direct violation of Section 97-9-59, Mississippi Code 1972 Annotated, as amended, contrary to the form of the statute in such cases provided, and *737 against the peace and dignity of the State of Mississippi.
At trial, Smallwood's demurrer to this indictment contained seven objections. He raises three of these objections on appeal. They are: (1) the indictment fails to show the identity or substance of the issue, or point of inquiry, in the cause in which perjury is alleged to have been committed; (2) the indictment fails to allege that the grand jury was investigating an offense of a criminal nature, or what the alleged offense being investigated was; (3) the indictment fails to allege that the words which constituted the alleged perjury were material to any issue of the grand jury proceedings during which they were uttered, nor did it state facts clearly showing their materiality.
As to the first point, Smallwood relies on State v. Silberberg, 78 Miss. 858, 29 So. 761 (1901), Chenault v. State, 154 Miss. 21, 122 So. 98 (1929), and Hentz v. State, 510 So.2d 515 (Miss. 1987). The Court stated in Silberberg that
[t]he indictment should have set out the substance of the issue involved in the chancery court cause. The point of inquiry should have been stated. "The proceeding should be identified by charging the legal name, as, for example, that it was a trial for murder or an action of ejectment; and the matter in issue must be averred with sufficient clearness to inform the person accused of perjury of the exact nature of the charge against him." 16 Enc.Pl. & Prac. p. 321, § 2, and cases cited in the notes.
Silberberg, 78 Miss. at 862, 29 So. at 761-62. The indictment identifies the proceeding in question as a grand jury investigation into the circumstances surrounding the death of Anthony Robinson. The indictment also specifies the point in the grand jury proceeding at which the alleged perjury took place. There is no deficiency on this point.
As to the second objection, Smallwood relies again on Chenault. Chenault was convicted of perjury pursuant to an indictment which stated that Chenault was asked, before a grand jury, about "a fight which took place at the home of Jesse Davis on the night of September 24, 1927, or thereabout... ." Chenault denied that the fight took place. This Court reversed his conviction and remanded, saying:
The indictment then charges that the oath was taken, and that the defendant, being then and there asked certain material questions concerning a fight which took place at the home of Jesse L. Davis on September 24, 1927, did not allege the character of the fighting or whether it was a fight between human beings, or name the persons, or any of them, engaged in the fight. The certain questions asked him are not set forth in substance, except the indictment did state one specific question which was asked, and his answer thereto.
... .
[W]e think it would be a better and safer practice, in framing an indictment for perjury, that in alleging false swearing it should set out the particulars of the matter upon which the charge of perjury is predicated, and, in a case like the one before us, should charge that the fight was between certain persons at a given time and place  this in order that the defendant should be advised as precisely as necessary what specific things he was to meet in his defense of the case. This is especially true of that part of the indictment which should charge what the truth of the subject-matter of the prosecution is.
Chenault, 154 Miss. at 31-32, 122 So. at 99. To the same effect is Hentz v. State, in which the indictment was faulty for not including the crime charged in the trial in which the alleged perjury occurred, and also for failing to allege facts which constituted the truth. Hentz, 510 So.2d at 517.
The indictment before us states that the grand jury had been investigating the circumstances surrounding the death of Anthony Robinson on November 4, 1986. The indictment did not name an alleged offense being investigated, but since there are a number of offenses that can result from the death of a child, this is not unreasonable. Unif.Crim.R.Cir.Ct.Prac. 2.05 *738 states that an indictment "shall be a plain, concise and definite written statement of the essential facts constituting the offense charged and shall fully notify the defendant of the nature and cause of the accusation against him. Formal or technical words are not necessary in an indictment, if the offense can be substantially described without them." Harbin v. State, 478 So.2d 796, 799 (Miss. 1985), adds that "[i]f from a reading of the indictment as a whole the accused is in fact given fair notice of that with which he has been charged, the indictment is legally sufficient." There is nothing in this record which indicates that Smallwood was not adequately informed as to the charges he would be facing.
As to materiality, the indictment clearly alleges that the allegedly perjurious testimony involved material matters. Raymond Smallwood argues that this is not enough, that the indictment must set out facts showing materiality. This Court stated, on this specific point, in Lea v. State, 64 Miss. 278, 283, 1 So. 235, 236 (1887):
In an indictment for perjury, it is sufficient to charge generally that the matter sworn to in the false oath was material to the issue or point of inquiry upon which it was taken, without showing particularly how it was material. The pleader has choice of two methods on the subject: he may either charge that the matter of the false oath was material; or he may set out the facts which show its materiality in law.
This is consistent with the general rule found in 60A AM.JUR.2D Perjury § 80 (1988), which states that "[a]s a rule, under both federal and state law, a general averment in an indictment or information for perjury that the false statement was material to the issue, without setting forth the facts from which such materiality appears, is a sufficient averment of materiality, provided the facts alleged do not show that the false testimony was not material." The indictment in question sufficiently complies with the aforementioned standards on materiality. This assignment is meritless.

III.
Raymond Smallwood's motion to quash the indictment was based on the fact that the same grand jurors who heard him testify on December 9, 1986, and were thus witnesses to his alleged perjury, were the same grand jurors, with one exception, who returned the indictment against him charging him with the crimes of perjury and conspiracy. He argues that because of this, the grand jurors could not have acted objectively in returning the indictment.
The State relies on Southward v. State, 293 So.2d 343 (Miss. 1974). In Southward, the crime alleged was breaking and entering with intent to commit rape. The victim's husband, along with wife of a first cousin of the husband, served on the grand jury which returned the indictment. The husband did not participate in the deliberations concerning this alleged crime, but the other challenged juror did. Southward filed a motion to quash the indictment, which was denied. After his conviction, Southward appealed, raising this issue. In affirming, this Court stated:
The legislature has provided that objections to an indictment for defects dehors the face of the indictment may be raised by a motion to quash. Miss. Code Ann. § 99-7-23 (1972). However, a limitation of time for objecting to qualifications of grand jurors has also been set out by legislative enactment, which states that once the grand jury has been sworn and empaneled, no objection can be raised except as to fraud. Miss. Code Ann. § 13-5-43 (1972). See Polk v. State, 288 So.2d 452 (Miss. 1974).
The Mississippi Constitution of 1890 in Article 14, section 264, as amended, provides that the legislature shall establish qualifications of jurors. These qualifications as set forth by the legislature appear in Mississippi Code Annotated section 13-5-1 (1972). Absent a statutory provision to the contrary, grand jurors, who are related to the victim of an alleged crime being investigated by the grand jury, are not disqualified on that basis alone. People v. Briggs, 50 Misc.2d 1062, 272 N.Y.S.2d 211 (Rensselaer County Ct. 1966); Zell v. State, 15 *739 Ohio App. 446, 32 Ohio C.A. 385 (1922); Lamkin v. State, 165 Tex.Cr.R. 11, 301 S.W.2d 922 (1957). See also IV R. Anderson, Wharton's Criminal Law & Procedure § 1692 (1957); 38 Am.Jur.2d Grand Jury § 7 (1968); 38 C.J.S. Grand Juries § 6f at 990 (1943).
We note that a grand jury serves in an investigative or accusatory capacity, and no statute, or common law rule, was cited disqualifying persons as grand jurors simply because of kinship to the victim of the alleged crime. There was no evidence whatever that any such relative grand juror or other member of said body acted with "malice, hatred, or ill will" or fraud, or otherwise violated the oath taken by grand jurors as set out by Mississippi Code Annotated section 13-5-45 (1972). Absent such evidence, it is presumed that the grand jurors did not improperly or illegally act in returning the indictment against the appellant.
Southward, 293 So.2d at 344; see also Franzi v. Superior Court of Arizona, 139 Ariz. 556, 679 P.2d 1043 (1984) (same grand jury that heard allegedly perjurious statements not disqualified from indicting defendant for that offense); State v. Oxendine, 303 N.C. 235, 278 S.E.2d 200 (1981) (motion to quash properly denied where murder victim's brother served on grand jury which handed down indictment, then testified for prosecution).
There is no evidence in this record of any fraud or wrongdoing on the part of the grand jurors. Indeed, there is some question as to whether Smallwood can even raise this question at this point in time. Though it would have been the better practice not to have sought the perjury and conspiracy indictments from the same grand jury which heard the alleged perjury, we find no reversible error here.

IV.
Raymond Smallwood argues that his motion for directed verdict, made at the end of all the evidence, and his post-trial motion for j.n.o.v., as to both perjury and conspiracy should have been granted. He alleges first that the statements made by Smallwood in front of the grand jury, even if false, were not material and therefore could not constitute perjury. Second, Smallwood attacks the sufficiency of the evidence as to both charges.

A. Materiality
Perjury, by definition, refers to false swearing concerning a material matter. Miss. Code Ann. § 97-9-59. This Court, in Roberts v. State, 224 Miss. 754, 759-60, 80 So.2d 841, 843 (1955), gave the following definition of material testimony:
While it is necessary that the false testimony be material to the issue being tried or to the point of inquiry, it is not necessary that it be material to the main issue. The test is whether the statement made could have influenced the tribunal on the issue before it. It is sufficient if it is material to any proper matter of inquiry, and is calculated and intended to prop or bolster the testimony of a witness on some material point, or to support or attack the credibility of such a witness. It may be laid down as a general rule that any testimony which is relevant in the trial of a case, whether to the main issue or some collateral issue, is so far material as to render a witness who knowingly and willfully falsifies in giving it guilty of perjury.
A rule similar to this one has been applied by other jurisdictions when dealing with grand jury proceedings. See Commonwealth v. Williams, 388 Pa.Super. 153, 565 A.2d 160 (1989); Chandler v. State, 756 S.W.2d 828 (Tex. Ct. App. 1988); People v. Toolen, 116 Ill. App.3d 632, 72 Ill.Dec. 41, 451 N.E.2d 1364 (1983).
In the case at bar, the trial court decided that Raymond Smallwood's statements before the grand jury were material as a matter of law. See Gullett v. State, 523 So.2d 296 (Miss. 1988). On one hand, it appears that the statement of Smallwood has little to do with the investigation of the grand jury. Regardless of whether or not he visited the apartment immediately after the phone call in question, it is undisputed that Anthony Robinson was already dead by that time. However, had the grand jury known of Smallwood's visit to the apartment *740 and his request that his presence there at that time not be revealed to the authorities, its deliberations could conceivably have been affected, especially concerning the credibility of Raymond Smallwood. Under this broad standard, the trial court's finding of materiality was correct.

B. Perjury
As for the sufficiency of the evidence, the pertinent standard for review of a motion for directed verdict is the following:
In passing upon a motion for a directed verdict, all evidence introduced by the state is accepted as true, together with any reasonable inferences that may be drawn from that evidence, and, if there is sufficient evidence to support a verdict of guilty, the motion for directed verdict must be overruled.
Guilbeau v. State, 502 So.2d 639, 641 (Miss. 1987).
The denial of a motion for j.n.o.v. is reviewed under the following standard:
We must consider all of the evidence, not just the evidence which supports the State's case, in the light most favorable to the State. May v. State, 460 So.2d 778, 781 (Miss. 1984). This Court must accept as true the credible evidence which supports the verdict. Spikes v. State, 302 So.2d 250, 251 (Miss. 1974). The State must be given the benefit of all favorable inferences that may reasonably be drawn from the credible evidence. Burge v. State, 472 So.2d 392, 396 (Miss. 1985). If the facts and inferences so considered point in favor of the defendant with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty, the assignment of error should be sustained. On the other hand, if there is substantial evidence in the record of such quality and weight that, having in mind the beyond a reasonable doubt burden of proof standard, reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions regarding the guilt of the defendant, we have no authority to disturb the jury's verdict. May v. State, 460 So.2d 778, 781 (Miss. 1984).
Winston v. State, 479 So.2d 1093, 1095-96 (Miss. 1985).
The prosecution presented no transcript, notes or any other written record of the questions asked or testimony given during the December 9, 1986 grand jury session. It relied instead on the memories of Betty McKibben and James Emerson, two grand jurors present during that session, as to what was asked and what the witnesses' answers were. McKibben supplied the following testimony:
Q. Do you recall that [Raymond Smallwood] was asked questions concerning his activities, the activities of Vicki Smallwood, his daughter, and a girl named Donna McCluskey, on the date that the child was found dead, which was November 4, 1986?
A. Right. He was.
Q. At the time that these questions were asked, do you recall whether he was specifically asked concerning a telephone call that he received at an apartment in Memphis, Tennessee?
A. He was. He said he received one.
Q. And do you recall what he said about the telephone call and about his activities following that telephone call?
A. Okay. He received a call from the girls and they told him that there was something wrong with the baby and he said he told them to call the ambulance and the police.
Q. Then was he asked what he did after he got that telephone call?
A. He went back to the apartment, I think maybe it was his apartment, or where they all were staying. And when he got there, he said the ambulance was already gone with the baby.
Q. Did he say where the baby's mother, Tracy Robinson, was at that time?
A. I believe she had gone on to the hospital, also.
Because of the lapse of more than a year between the grand jury session and the trial, McKibben could not remember the exact wording of the questions posed to Smallwood and his answers.
*741 James Emerson was asked for his recollection of Raymond Smallwood's version of the events of November 4, 1986. Emerson testified:
Q. Now. Basically, what did the questions consist of, what was asked of these people, specifically, Mr. Smallwood?
A. Well, he was asked where he was at the time and what happened, to give his version of it.
Q. Do you recall his replies?
A. He said that he was in the bed asleep and two of the girls had left to go and take one of their brothers to the dentist or pick him up at the dentist. And then they had returned home and brought him some coffee. And that he, after getting up and drinking it, he had left and gone to a friend of his which lived on Winchester. I don't remember his name, but they called him "Mississippi." And later on in the day, they had called, one of the girls had called him, and said something was wrong with the baby and he advised them to call the police and an ambulance. And then he said when he and his friend got there, they were all gone. The police was gone and so was the ambulance and the baby.
Emerson was also uncertain about the exact wording of some questions and whether certain questions were asked.
Maxine Sawyer, a third grand jury member, was called as a defense witness. When asked if she remembered any specific questions asked of Raymond Smallwood during the session, she answered, "No. I don't." On cross-examination, Sawyer testified:
Q. Do you remember Mr. Smallwood and the two girls telling the grand jury, under oath, that from the time that Mr. Smallwood got this call at his buddy's house, remember they called him Mississippi, his friend? That was his nickname.
A. Yes.
Q. That when, from the time they got from those apartments, him and his buddy, in Winchester, down in the apartment in Southaven, where they lived, that the ambulance had already come and taken the baby away and the police already gone. Do you remember that?
A. Yes.
Q. And the girls said the same thing, that when they made the call, from the time they made the call to the ambulance and the police, nobody came in that apartment until the police came and it was not until after the police came, the ambulance came, that the child was removed, until Mr. Smallwood and his buddy got there. Do you remember that?
A. Yes.
The first, most obvious problem with the prosecution is the fact that none of the questions or answers provided in the critical grand jury session were preserved in any manner. This Court long ago recognized the importance of having a record or trial transcript where perjury was alleged to have occurred in the trial of a case or other proceedings in a court of record. See Polk v. State, 204 Miss. 538, 37 So.2d 761 (1948). The potential for error is obvious, especially with an offense where conviction depends so literally on the exact words of the defendant. If our research is any indication, then cases such as this, where perjury is prosecuted without any kind of transcript or verbatim record of the proceedings in question, are extremely rare. We do not find that such a prosecution for perjury is per se flawed or reversible. We do find that when a situation like this occurs, the district attorney must make an effort to preserve in some manner the questions asked and the answers given by the defendant. Here there was at least an attempt to tape the grand jury sessions, but the ultimate failure to accomplish this adds to the difficulty of the consideration of this appeal.
Second, we are faced with the nature of the crime itself. Perjury requires stringent proof of a direct and compelling character. In order to convict for perjury, the State is required to prove the falsity of the accused's statement by a minimum of two witnesses, or by one witness and corroborating circumstances. McFee v. State, 510 So.2d 790, 792-93 (Miss. 1987). This burden is comparable to that required to *742 prove treason. Miss. Code Ann. § 97-7-69 (1972). In the case at bar we are faced with tentative and uncertain testimony concerning an incident which occurred more than one year previously to the testimony given. The testimony is also contradictory as to whether Raymond Smallwood may have told the literal truth to the grand jury. The consistency and specificity of testimony required for conviction of such a crime are lacking. We find that, even when taking the evidence in a light most favorable to the State, the prosecution failed to make out a prima facie case of perjury. Because the lower court erred in failing to grant Raymond Smallwood's motion for directed verdict, or motion for j.n.o.v., the conviction for perjury must be reversed and rendered.

C. Conspiracy
This Court has stated, on the matter of conspiracy:
Conspiracy is a combination of two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose unlawfully, the persons agreeing in order to form the conspiracy. The offense is complete without showing an overt act in furtherance of the conspiracy. Norman v. State, 381 So.2d 1024 (Miss. 1980); Moore v. State, 290 So.2d 603 (Miss. 1974); Pickett v. State, 139 Miss. 529, 104 So. 358 (1925).
There must be recognition on the part of the conspirators that they are entering into a common plan and knowingly intend to further its common purpose. McDonald v. State, 454 So.2d 488 (Miss. 1984). If there is an agreement, then knowledge of that agreement follows. The agreement need not be formal or express, but may be inferred from the circumstances, particularly by declarations, acts, and conduct of the alleged conspirators.
Griffin, 480 So.2d 1124, 1126 (Miss. 1985).
Vicki Smallwood testified that when her father and Gary Glover left the apartment, Glover said, "`We're not here, we haven't been here,' or `We've already been in trouble before and we don't need to be here.' And I think my father may have said yes. I am not real sure." She did not reveal to the Southaven Police that Raymond Smallwood had been at the apartment before the police and medical personnel had arrived. She stated that she had agreed to stick to that story, and continued in that agreement when she testified before the grand jury. She also testified that her father had said, before testifying before the grand jury, that "if they asked me I will tell them the truth."
Donna McCluskey testified that both Gary Glover and Raymond Smallwood stated that they didn't want the police to know that they had been at the apartment. Donna did not tell the police that they had been there. After the events of November 4, Donna understood that she and the others had an agreement not to mention that Smallwood and Glover had been at the apartment after the baby's death had been discovered. Later, after Donna had told the Memphis police the truth about that afternoon, she met with Raymond Smallwood. She remembered that Smallwood was upset, and said, "we weren't supposed to go back on our story."
Gary Glover testified that when he and Raymond Smallwood arrived at the Lock Lomond apartment to find the dead baby, he felt that, because of a prior felony conviction, he had been put into "a situation where I didn't need to be." He left the apartment with Smallwood at that time. Glover offered no testimony as to whether Raymond Smallwood had said the same thing.
The conviction on the conspiracy count presents a close question. Considering all the evidence most favorably to the State, we find that the lower court properly allowed the question of conspiracy to go the jury. We also find that the verdict of guilty as to conspiracy is not against the weight of the evidence, and there was no abuse of discretion in overruling Smallwood's motion for new trial. See Unif. Crim.R.Cir.Ct.Prac. 5.16; Britt v. State, 520 So.2d 1377 (Miss. 1988); Jenkins v. State, 483 So.2d 1330 (Miss. 1986).
Raymond Smallwood's conviction for perjury is reversed and rendered. His conviction *743 for conspiracy and sentence of five (5) years, along with all court costs, is affirmed.
AFFIRMED IN PART, REVERSED AND RENDERED IN PART.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, SULLIVAN, BANKS, and McRAE, JJ., concur.