# 𝔖taunton

MITCHELL-POWERS HARDWARE COMPANY, INC., ET ALS. V. HUGH H. EATON, JR.

September 9, 1938.

Present, Holt, Hudgins, Gregory, Browning and Eggleston, JJ.

The opinion states the case.

*Pennington & Worley,* for the appellants.

*M. M. Heuser,* for the appellee.

GREGORY, J., delivered the opinion of the court.

The litigation from which this appeal arises was begun on November 6, 1936, by J. P. Young who filed a creditor's bill against the estate of Hugh H. Eaton, Sr., deceased. Another creditor's bill was filed against the estate by the trustees for certain depositors of the Bank of Bristol who sued for the benefit of the Reconstruction Finance Corporation. A petition was filed in the cause by Mitchell-Powers Hardware Company. In the latter bill and in the petition a note of $5,000 made by Eaton in his lifetime and payable to his sister, Miss Sarah A. Eaton, to which was attached as collateral fifty-five shares of the capital stock of the Mitchell-Powers Hardware Company, was attacked as being without consideration. Later the causes were consolidated by a decree, in which the whole matter was referred to a commissioner in chancery for report upon certain inquiries specifically directed in the decree. The commissioner reported that the $5,000 note to which the fifty-five shares of stock were attached as collateral was given for no legal consideration and it was accordingly not allowed as a debt against the estate.

The note and stock were transferred from Miss Sarah A. Eaton to Hugh H. Eaton, Jr., at that time fifteen years of age, and a son of Hugh H. Eaton, Sr., deceased. He had appeared in the litigation by guardian ad litem and filed exceptions to the commissioner's report which disallowed the $5,000 note as a claim against the estate and which set aside the transfer of the fifty-five shares of stock from Hugh H. Eaton, Sr., to his sister Sarah A. Eaton.

The court, after mature consideration of the exceptions to the report, sustained the exception of Hugh H. Eaton, Jr., the appellee here, entered a decree establishing the $5,000 note as a debt against the estate and impressed the fifty-five shares of stock with a lien for the payment of the note. It is from this part of the decree that the present appeal was sought and allowed; therefore, the sole purpose of this appeal is to determine the correctness of the ruling of the court in establishing the $5,000 note as a liability of the estate of Hugh A. Eaton, Sr., deceased, and allowing a lien on the fifty-five shares to secure its payment.

In the bill of complaint filed by the trustees of the depositors of the Bank of Bristol and the petition of the Mitchell-Powers Hardware Company, it was alleged that Hugh H. Eaton, Sr., was the owner of 100 shares of the capital stock of the Mitchell-Powers Hardware Company at the time he became indebted to the Bank of Bristol. At this time he was also indebted to other persons, firms and corporations, including a debt to the Mitchell-Powers Hardware Company. On February 4, 1934, Hugh H. Eaton, Sr., executed a note for $5,000 to his sister, Miss Sarah A. Eaton, which was secured by sixty shares (later found to be fifty-five shares) of stock of the Mitchell-Powers Hardware Company. The note and stock were delivered to E. W. Potts, trustee, with instructions to deliver the stock or what was left to Hugh Eaton, Jr., when the note was paid. It is contended by the appellants that the note was executed without consideration and was voluntary and fraudulent under Code, sections 5184, 5185.

The purpose of the bill and petition was to set aside the transfer of the fifty-five shares of stock and make them available for the payment of the debts of the estate of Hugh H. Eaton, Sr., deceased.

In the answer of the guardian ad litem of Hugh H. Eaton, Jr., the infant appellee, to the bill and petition, the position of the infant is set forth. He acknowledges the execution of the note and that fifty-five shares of stock were pledged as collateral, as well as the equity in twenty-five additional shares of stock then pledged as collateral on a note due to J. P. Young. Hugh H. Eaton, Sr., endorsed in blank the assignment on the certificates representing the fifty-five shares of stock and these were held by E. W. Potts as trustee under a trust which provided that upon the discharge of the note, the fifty-five shares of stock should be delivered to Hugh H. Eaton, Jr., if he were then of age and, if not, that the stock should be held by the trustee until he reached the age of twenty-one. He further states that the above related transaction was made in pursuance of an agreement between Hugh H. Eaton, Sr., and his sister, Sarah A. Eaton, whereby he promised to reimburse her for her support of their mother. After several years Hugh H. Eaton had been unable to make these payments and as a result executed a note to Sarah Eaton, secured by a deed of trust upon his house, and thereafter the note and deed of trust were canceled, and in their place the above described note was executed and the stock placed as collateral.

From the foregoing allegations, as has already been indicated, complainants were seeking to set aside the note for $5,000 and the transfer of the fifty-five shares of stock to Miss Sarah A. Eaton as having been made without valid consideration and void under the provisions of Code, sections 5184, 5185. From the averments of the answer of the guardian ad litem, the validity of the note and the transfer of the fifty-five shares of stock were sought to be upheld under a verbal trust whereby Hugh H. Eaton, Sr., had agreed to reimburse and compensate Miss Sarah A. Eaton for the expense she had incurred and would incur by reason

of maintaining and supporting their aged mother, Mrs. A. B. Eaton who was ninety years of age. It was also made in consideration of her promise to continue the support of her mother as long as she might live. The evidence supports the oral contract claimed by the guardian ad litem in his answer.

The question we must decide is whether or not Hugh H. Eaton, Sr., was under a legal obligation to support his mother. If he was, then such obligation would constitute a valid consideration for the note and the transfer of the stock. On the other hand, if he was under no legal obligation to support his mother, the note would be without consideration and the assignment would be void under Code, section 5185.

It is stated in the brief of counsel for appellee that the only question presented is whether or not a contract for the support of one's aged and dependent parent is a contract upon a consideration deemed valuable in law.

Prior to 1927 it was certainly true in Virginia that a child was under no legal obligation to support his parent whether dependent or not. In *Davis* v. *Anderson,* 99 Va. 620, 39 S. E. 588, the court expressly held that there was no legal obligation resting on either the son or the daughter to care for and support their mother.

Appellee admits that such was the law prior to 1927, but contends that the rule was changed, (1) by the case of *Bruce* v. *Dean,* 149 Va. 39, 140 S. E. 277, and, (2) by Code, section 1944a.

In *Bruce* v. *Dean, supra,* one Meadows had been convicted of the murder of his wife and sentenced to life imprisonment. The mother left surviving her six infant children who ranged in age from one and a half to twelve years. These children were taken to the Church of the Brethren Industrial School. It became necessary for the school authorities to seek remuneration for the maintenance and support of the children, and Meadows was anxious to provide it. Pursuant to this mutual desire, Meadows conveyed all of the equity in his estate to the industrial

school upon the trust agreement that the industrial school would assume the responsibility of maintaining, educating, supporting and rearing the children until such time as they could take care of themselves. This deed of trust was attacked on the ground that it was voluntary, fraudulent and void under section 5184 of the Code. The court, speaking through Judge Chichester, said (page 280) :

"It is very clear that the conveyance in this case is not voluntary within the meaning of the law. It was not a conveyance to the children of the grantor, while he was indebted, but it was, in effect, a conveyance to a third party upon the assumption by the trustee of the obligation to support, maintain and educate the children during their minority. It was, therefore, founded upon valuable consideration.

"Support, whether of the promisor or a third person is a valuable consideration. See 6 R. C. L., page 656, section 68; Page on Contracts, vol. 1, section 297; *Pellizzarro* v. *Reppert,* 83 Iowa 497, 50 N. W. 19; *Taylor* v. *Crockett,* 123 Mo. 300, 27 S. W. 620; *Campbell* v. *McLaughlin* (Mo. Sup.), 205 S. W. 18; *Brown* v. *Taylor,* 174 N. C. 423, 93 S. E. [982] 983, L. R. A. 1918B, 293. It is the legal as well as the moral duty of a father to support his dependent infant children. In *Mihalcoe* v. *Holub,* 130 Va. [425] at page 430, 107 S. E. [704], 706, this court said: 'The rules are much the same regarding support of infant children by their father. He owed them the duty of maintenance. This, by the weight of American authorities, founded upon common sense and natural justice, is a legal, and not merely a moral, obligation.'

"Judge Kelly, in this case, cites with approval the case of *Finn* v. *Adams,* 138 Mich. 258, 101 N. W. 533, 4 Ann. Cas. 1186, which holds that a father who is confined in the penitentiary for life is still liable for the support of his minor child."

It is at once apparent that there is a very substantial distinction between this case and the case at bar. There, the father was under a legal obligation to support his children,

while in the case at bar Hugh H. Eaton, Sr., was not under any legal obligation to support his mother, unless such legal obligation was created by Code, section 1944a.

Code, section 1944a, provides in part that "it shall be the duty of all persons sixteen years of age or over, of sufficient earning capacity or income, to provide or assist in providing for the support and maintenance of his or her mother or aged or infirm father, he or she being then and there in destitute or necessitous circumstances."

Undoubtedly this statute imposes upon a person sixteen years of age or over the mandatory legal obligation, if of sufficient earning capacity or income, to support or assist in supporting his mother, if she is in destitute or necessitous circumstances. In other words, the consideration for a contract to support one's mother would be one "deemed valuable in law," and not in violation of Code, section 5185.

One condition of section 1944a is that the mother must be destitute or in necessitous circumstances. This is essential to her right to support and a condition precedent to the creation of the legal obligation resting upon the child. "Destitute" has been defined in Webster's New International Dictionary, Second Edition, as "not possessing the necessities of life; in a condition of extreme want; without possessions or resources." In that same valuable work "necessitous" is thus defined: "Living in or characterized by poverty; needy." Again it is defined as "narrow, destitute, pinching, pinched, as necessitous circumstances."

For the meaning of "indigent circumstances," see *English* v. *Elks' National Home,* 161 Va. 145, 170 S. E. 607. The court there held that term to be relative.

Support and maintenance, as used in the statute, mean in a moral and legal sense, having regard to the situation, mode of life and condition of the persons concerned. It means the son or daughter, if of sufficient earning capacity or income, must do more than relieve the pangs of hunger, provide shelter and furnish only enough clothes to cover the nakedness of the parent. He or she must furnish such support and maintenance as comport with the

health, comfort and welfare of normal individuals according to their standards of living, considering his or her own means, earning capacity, and station in life.

The statute was intended to cover the case of a parent who is in destitute or necessitous circumstances according to his or her standard of living, and in determining whether or not he or she is in destitute or necessitous circumstances, the question, being one of fact, should be determined by a jury under proper instructions from the court.

Judge Keith said in *Burton's Case, Burton* v. *Commonwealth,* 109 Va. 800, 63 S. E. 464, a criminal case where a husband was prosecuted for failure to support his wife, that whether the wife was destitute and in necessitous circumstances, should be determined by the jury. He used this language (page 466) : "As to what shall be considered sufficient proof of the offense must depend upon the circumstances of each case. There is no fixed standard by which the law undertakes to define what shall constitute 'destitute' and 'necessitous circumstances.' It may vary with the conditions to which the parties have been accustomed. The necessaries of one person may be the luxuries of another, reared in and habituated to different surroundings. It is safest, therefore, to leave it to the jury to say whether or not the facts established the charge, subject always to review by the court in a proper case and upon familiar principles."

It is apparent from the record in this case that the question, whether or not Code, section 1944a, made it the legal duty of Hugh H. Eaton, Sr., to support and maintain his mother, was not fully considered before the court below. Did Hugh H. Eaton, Sr., have sufficient earning capacity or income to provide or assist in providing for the support and maintenance of his mother, and was she then and there in destitute or necessitous circumstances? It is essential that this question be answered before it can be determined that Hugh H. Eaton, Sr., was under a legal obligation to furnish his mother support. If the question is answered in the affirmative, then the $5,000 note and the transfer of the fifty-five shares of stock were based upon a consideration

deemed valuable in law. If the question is answered in the negative, then the note and the transfer of the stock would not be founded upon a valuable consideration and it would come within the condemnation of Code, section 5185, and be void.

It has not been contended that the amount set up in the trust was excessive, or more than sufficient for the support of the mother. Of course, a debtor, under the guise of supporting his aged and destitute parent and with fraud- ulent intent, will not be permitted to divest himself of his property and convey it beyond the reach of his creditors. That is not the case here. In this case there is no evidence tending to show that Mr. Eaton intended to hinder, delay or defraud his creditors, but on the other hand, if the mother was in destitute or necessitous circumstances, the making of the note and the transfer of the stock was founded upon a valuable consideration.

The evidence is obscure and there is practically none touching the essentials of the statute. The record is not in such condition as will permit this court to enter a final decree. We, therefore, remand the cause to the trial court to hear further evidence concerning the question indicated, and to award an issue out of chancery and submit to a jury, under proper instructions, whether Hugh H. Eaton, Sr., was legally bound to support, or to assist in supporting his mother under Code, section 1944a. See Code, section 6365; *Greer* v. *Doriot,* 137 Va. 589, 120 S. E. 291; *Branning Manufacturing Company* v. *Norfolk-Southern Ry. Co.,* 138 Va. 43, 121 S. E. 74; *Mayflower Mills* v. *Hardy,* 138 Va. 138, 120 S. E. 861.

*Reversed and remanded.*