John T. Casey, J.
Having previously been granted the right to inspect the Grand Jury minutes, on which two indictments, numbered B-3072 and B-3073, are founded, the defendant moves, under the pertinent provisions of the Code of Criminal Procedure (§§ 313 and 671), for their dismissal.
The first of the indictments charges the defendant with causing to be presented false proofs of loss in support of claims upon policies of insurance, in violation of subdivision 1 of section 1202 of the Penal Law.
The latter charges the defendant with felonious abandonment of his children, in destitute circumstances, in willfully omitting to provide life’s necessaries for them, in violation of section 480 of the Penal Law.
Both crimes are alleged to have been committed on the same date, July 17, 1960. The same Grand Jury considered both charges at the same time and in the same sessions, the 18th, 19th and 20th of May, 1965.
The main thrust of the evidence underlying both demonstrates that, on July 17, 1960, the defendant staged, produced and directed a monodrama complete in every respect, save fiction, and purposely designed to convince his family, the authorities and the public that he had met death accidentally while scuba-diving in the Tomhannock Reservoir and, as a result, his wife was caused, without apparent knowledge of his deception, to file claims on his life insurance policies, as beneficiary, and thus to collect the substantial proceeds thereof.
It is the defendant’s contention that the evidence before the Grand Jury is not only insufficient but highly prejudicial, necessitating a dismissal of both indictments. If the defendant’s claims are upheld, such a result must follow. (People v. Saas, 4 Misc 2d 654; People v. Fleckenstein, 27 Misc 2d 728.)
The charges contained in the indictments, at least under the facts as revealed by the Grand Jury minutes, cannot coexist for they are mutually repugnant, each to the other. It is undisputed that the defendant, himself, never realized any financial gain from his pretense. If the motivation of his deception was the hope of pecuniary gain for his wife and children (and this is well within the realm of foreseeability and a material and determinative element necessary for the validity of the first indictment), then it is difficult, if not impossible, fo conclude that he willfully abandoned his children, in destitute circumstances, proof of which is vital to the second indictment. For, if the *1064 effect of Ms disappearance was to deprive Ms cMldren of the fruits of his paternal labors, then equally, the result of such disappearance was also to provide them with the gain effected by his deception.
The record is devoid of any objective proof that the children were left in destitute circumstances. Always they were properly fed, clothed, cared for and nurtured. Never did they become a public charge. True, it was their mother and grandparents that provided for them, until the receipt of the insurance proceeds which upgraded their financial status. However, without a showing of actual, objective destitution (defined as being, or likely to become a public charge) there can be no basis for legal abandonment. While morality would certainly dictate no such requirement, the law mandates it. (People v. Smith, 88 Misc. 136.)
Since proof of a material element, essential for a violation of section 480 of the Penal Law, is lacking, Indictment D-3073 must be dismissed for the insufficiency of proof. Dismissal is required where the court would be compelled to direct an acquittal were the same facts adduced before a trial jury. (People v. Sylvester, 149 Misc. 138.)
Indictment D-3072 (charging a violation of subdivision 1 of section 1202 of the Penal Law) differs in its requirements. Herein, the defendant is accused of having caused to be presented, false and fraudulent claims of insurance and made his preparations to that end with knowledge that it Avould so be done. In this regard, the evidence is sufficient to have permitted the Grand Jury to draAV a logical inference beyond a reasonable doubt, that the defendant, a month previous, had discussed with his wife her financial betterment in case of his death; that the defendant left Ms jeep containing his personal wearing apparel close to shore; that the defendant told a fisherman he intended to dive through the night; that the defendant left various items of diving equipment in such position and condition as Avould convince family and friend of his death, Avith full realization that such conclusion Avould load to the collection of the substantial proceeds of his life insurance policies by his Avife, for her and his children’s benefit and that, subsequent to these simulations, he departed furtively and secretly to change his identity and work variously as a Vermont farmhand, missile site foreman and Wyoming cowboy, leaving 6 State Police officers and other volunteers conducting diving and searching operations to find Mm, dead or alive, and a quizzical public whose interest Avas inordinately fanned by sensationalistic news media speculating as to his Avhereabouts.
*1065 For over four years, he made no effort to correct this impression. By the merest of accidents, Ms whereabouts and identity were discovered.
As briefly outlined, this evidence would be sufficient on wMch to predicate Indictment D-3072 and to compel the determination of its issues by a trial jury.
The record, however, is injected with patent hearsay. One witness was permitted to testify to the contents of a telephone call made by an anonymous caller who, shortly after the defendant’s departure, inquired about the insurance requirements in ease of a disappearance. No effort was made to connect the defendant to this conversation and its content constituted illegal evidence before the Grand Jury. State Police officers were asked or permitted to testify to what others told them in the course of their investigation; various items of scuba-diving equipment were introduced into evidence without proper foundation or connection; and the interjection of the defendant’s acquaintanceship, actual or assumed, with a murder victim of a much publicized unsolved case in another jurisdiction constituted undue prejudice and must, of necessity, have influenced the Grand Jury, requiring a dismissal of Indictment D-3072. It is axiomatic and fairness would dictate that only evidence probative of the charges presented may be offered against a defendant.
The defendant further urges dismissal on the ground that the foreman of the Grand Jury is a first cousin of the grandmother of the defendant’s wife. Any such relationship does not disqualify the grand juror (Judiciary Law, §§ 662, 664). Individual grand jurors, who have been sworn and impanelled, cannot be challenged on the basis of consanguinity (Code Crim. Pro., § 232; People v. Prior, 294 N. Y. 405), and in no event can an individual grand juror be challenged after an indictment has been presented. (People v. Petrea, 92 N. Y. 128; People v. Nugent, 57 App. Div. 542.)
This court, therefore, concludes that both Indictments D-3072 and D-3073 must be dismissed for the reasons stated in this decision, for the Grand Jury can receive none but legal evidence (Code Crim. Pro., § 249).
Leave is granted to the District Attorney, however, to resubmit to a different Grand Jury either or both cases on competent and legal evidence.