## Richmond

MILLER & LONG COMPANY OF VIRGINIA, INC., ET AL. V.
JAMES H. FRYE, ET AL.

March 10, 1975.

Record No. 740485.

Present, All the Justices.

*Robert W. Dowler* (*Mountfort & Furr*, on brief), for appellants.

*Lawrence J. Pascal* (*Ashcraft & Gerel*, on brief), for appellees.

Per Curiam.

Michael J. Frye, 22 years of age, was killed on March 2, 1973, at a construction site in Fairfax County, Virginia, in an industrial accident arising out of and in the course of his employment.

His employer and the insurer appeal from an award of the Industrial Commission of Virginia, one Commissioner dissenting, which provided for the payment of workmen's compensation benefits to the claimants, the parents and five minor sisters of the deceased employee, upon a finding that they were partially dependent upon the employee. The full Commission had reviewed a deputy commissioner's order which dismissed the claim on the ground that dependency had not been shown by the evidence.

We granted an appeal to consider whether the Commission's finding of partial dependency was supported by credible evidence. We hold that it was not and reverse.

The evidence is without conflict and consists of the record of the October 31, 1973, hearing before the deputy commissioner, the only witness being the decedent's father who testified in person and by deposition.

At the time of the accident, Michael, one of nine children of James and Helen Frye, was living with his parents at their home in Arlington, Virginia with the other five claimants, his sisters, who were 16, 15, 10, 9 and 4 years of age. Also residing in the home was another sister, 24 years of age, who was a college graduate, unmarried and unemployed; and a brother, 18 years of age, who was regularly employed, having dropped out of high school. Another sister, about 20 years of age, was married and living with her husband in Northern Virginia.

The father, 48 years of age, was employed by the federal government as an analyst in the Department of Defense at a gross annual salary of $27,700. During January and February, 1973, his weekly gross earnings amounted to $511 and his net weekly earnings were $396, as the result of deductions by his employer for federal income taxes, life insurance, health insurance and "FICA/RET." During the same period, the father's weekly expenses were $509. He testified that during this period, he was the "sole support" of his wife and children living at his home and that Michael had been "contributing also . . ." to this support. In addition, the father helped "a little" to support the married daughter and her husband, although they were "pretty much on their own."

Upon graduation from high school in 1968, Michael entered Madison College in Harrisonburg, Virginia, majored in education, and completed his course of instruction by the first part of December, 1972. He was scheduled to receive his college degree in May of 1973. During his college years, Michael had worked during each summer but was not employed during the school session. The father had paid the total cost of this education of ten to twelve thousand dollars.

Beginning in December, 1972, Michael returned from college and worked continuously for Miller & Long Company of Virginia, Inc. while living at his parents' home, where he ate approximately two meals a day. The evidence showed that his net weekly income was approximately $110, of which about $67 weekly was used to pay for the following: family groceries ($40) ; the family telephone bill ($5) ; gasoline used in the father's three

motor vehicles, one of which Michael drove to and from work ($10) ; and entertainment of his younger sisters by taking them to the movies, bowling and "the toy store" ($12). The father estimated Michael's total contribution to the "family fund" was seventy to seventy-five percent of his net income, or $77. Accordingly, the Commission averaged the foregoing totals and established the contribution to be $72 weekly.

Michael also made repairs to the motor vehicles, and the father testified that he "was almost wholly 100 percent dependent on him" for "repairs and maintenance around the house."

The father testified that he claimed Michael as a dependent for federal income tax purposes and that Michael never claimed his parents as dependents "on his income tax returns."

Michael's brother contributed to the family "by buying a few things for the house," but he was "mostly saving his money for an education." The eldest child helped "at home with the other kids" since she had been unable "to find a teaching job."

Upon this evidence, and using a schedule it had adopted to allocate cost of meals and lodging in cases where room and board were furnished by an employer to an employee as a part of his compensation, the Commission found the claimants to be "partially dependent to the extent of 11% upon the earnings of the employee" and, accordingly, ordered that compensation benefits be paid jointly to the claimants. The award also provided for the payment of counsel fees and burial expenses.

■ The claimants maintain that the award is based on credible evidence and, accordingly, argue that the Commission's factual finding of dependency is conclusive on appeal, citing Code § 65.1-98. The employer and the insurer contend that the award is unsupported by credible evidence, and is therefore illegal and should be set aside, citing *Holt* v. *Stone, etc., Eng. Corp.,* 179 Va. 625, 629, 20 S.E.2d 498, 499 (1942).

The claimants here are not in the class of persons conclusively presumed dependent by Code § 65.1-66; therefore, this claim is based on Code § 65.1-67 which provides that:

"In all other cases questions of dependency in whole or in part shall be determined in accordance with the facts as the facts are at the time of the accident; but no allowance shall be made for any payment made in lieu of board and lodging or services

and no compensation shall be allowed unless the dependency existed for a period of three months or more prior to the accident."

In applying this section, " [t]he employee must have contributed with some degree of regularity, and such contributions must have been relied upon by the claimant for reasonable necessaries consistent with his or her station in life." *Glassco* v. *Glassco*, 195 Va. 239, 243, 77 S.E.2d 843, 845 (1953). While proof of absolute dependency for life's necessities is not required, it must be shown that the claimant looked to and relied on the contributions of the employee, " 'in whole or in part, as a means of support and maintenance in accordance with his or her social position and accustomed mode of life.' " 195 Va. at 242, 77 S.E.2d at 845.

We hold there is no credible evidence to support the finding of partial dependency. The deficiency in the claimants' evidence is that it failed to show their reliance on Michael's contributions, in whole or in part, as a means of reasonable support consistent with their station in life. This is the case of an adult son who received at home free the benefits (food, housing, use of a telephone, and use of a motor vehicle), which one regularly employed would ordinarily pay for when living away from home. In return for these benefits, the son voluntarily performed services and made payments to aid the father, who earned a substantial income, in the support of a large family. This is a situation of mutual assistance and not one of unilateral reliance. *See generally Hall* v. *Carwile*, 214 Va. 570, 202 S.E.2d 926 (1974).

The lack of reliance is illustrated by the fact that no change was demonstrated in the family's accustomed mode of living when Michael's contributions commenced before his death, or when they ceased as the result of his death. In *Glassco, supra,* which held that a mother was partially dependent on her minor son, there was evidence that after the son's death, the claimant "was unable to acquire those things which she had been accustomed to buy out of his contributions." 195 Va. at 244, 77 S.E.2d at 846. The evidence in this case shows no such dependence on Michael's contributions.

The order of the Industrial Commission of April 25, 1974, insofar as it provides for the payment of compensation to the claimants and counsel fees will be reversed and the application

will be dismissed. The case will be remanded for consideration of an appropriate award respecting burial expenses. Code § 65.1-70.[1]

*Reversed and remanded.*

---

[1] While the Commission included an order to pay burial expenses in its award, we are unable to properly dispose of such claim on the record before us. Apparently, the claim was made orally by claimants' attorney during the deposition, followed by an unreported "off the record" discussion, at a time when the bill was "incomplete."