455 S.E.2d 267

ROANOKE BELT, INC., et al.

v.

Martin Matthew MROCZKOWSKI (deceased), et al.

Record No. 1077–94–3.

Court of Appeals of Virginia,
Salem.

March 28, 1995.

Jim H. Guynn, Jr., Roanoke (Parvin, Wilson, Barnett & Guynn, P.C., on briefs), for appellants.

William H. Fralin, Jr., Roanoke (Jolly, Place, Fralin & Prillaman, P.C., on brief), for appellees.

Present: MOON, C.J., and COLEMAN and KOONTZ, JJ.

KOONTZ, Judge.

In this appeal we are required to address a number of issues of first impression with respect to the eligibility of a parent of a deceased employee to receive benefits under the Virginia Workers' Compensation Act. Roanoke Belt, Inc. and

its insurer, Travelers Insurance Co. (collectively Roanoke Belt), appeal an award by the Virginia Workers' Compensation Commission (commission) pursuant to Code § 65.2–515(A)(4) to Linda Phyllis Jacobs Mroczkowski (Mrs. Mroczkowski) arising out of the death of her son in a compensable industrial accident.

In reply, Mrs. Mroczkowski, pursuant to her right under Rule 5A:21(b), raises the additional issues of (1) whether the commission's finding that she is a parent in destitute circumstances is reviewable as a finding of fact or question of law, and (2) whether the commission erred in finding that she was not, in the alternative, entitled to benefits as a partial dependent pursuant to Code § 65.2–516. For the following reasons, we reverse the commission's award.

## I.

## FACTUAL BACKGROUND

The material facts are not in dispute. In October 1991, following the death of her husband, Mrs. Mroczkowski and her two minor daughters moved from Brooklyn, New York to Roanoke, Virginia. She rented a three-bedroom apartment with the expectation that her twenty-one year old son, Martin Matthew Mroczkowski (Martin), would subsequently come to live with her and his sisters. In April 1992, Martin and his girlfriend, Renee Krol, moved into this apartment with the other members of the family. In May 1992, Martin became employed with Roanoke Belt and subsequently was killed in a compensable accident on September 29, 1992.

Prior to moving to Roanoke, Mrs. Mroczkowski was a computer loan analyst for a New York bank and earned an annual salary of $32,000. When the bank began "downsizing" its staff, she voluntarily took a package of pension and unemployment benefits so that she could move out of New York. At the time of Martin's death, Mrs. Mroczkowski was receiving $1,200 per month in unemployment benefits from New York and held approximately $12,000 in an individual retirement account in a local bank. Mrs. Mroczkowski also was

receiving $1,000 per month in social security benefits on behalf of her daughters as surviving dependents of her deceased husband. She owned no real estate or personal property other than incidental household items. She had no medical insurance.

After Martin became employed with Roanoke Belt, he began paying Mrs. Mroczkowski $75–100 per week for household expenses, including room and board for himself and Renee Krol. Expenses for the whole family amounted to approximately $1,000 per month, including $525 rent for the apartment. In addition, Martin provided transportation to his mother and sisters, went to the grocery store, occasionally contributed items of clothing for his sisters and acted "as the man of the house." Mrs. Mroczkowski did not have a New York or Virginia operator's license.

Mrs. Mroczkowski is forty-five years old and, although she suffers from a respiratory condition, is neither physically or mentally disabled from gainful employment. She has a high school education. Mrs. Mroczkowski maintains, however, that she has been unable to secure employment in Roanoke.

Following her son's death, Mrs. Mroczkowski applied to the commission for survivor's benefits, alleging that she was a destitute parent entitled to benefits as a presumptive total dependent pursuant to Code § 65.2–515(A)(4) or that she was, in the alternative, an actual, partial dependent of Martin pursuant to Code § 65.2–516.[1] At that time, Mrs. Mroczkowski established that her unemployment benefits expired approximately one month after Martin's death. In addition, at the time of the proceedings before the deputy commissioner, she had depleted the funds in her individual retirement account. The deputy commissioner ruled that it was improper to consider the unemployment benefits Mrs. Mroczkowski was receiving at the time of Martin's death in determining her status. Accordingly, the deputy commissioner found that Mrs.

---

1. Martin's sisters also sought benefits as partial dependents. The deputy commissioner denied their claim on the ground that they were not actual dependents. That denial is not a part of the present appeal.

Mroczkowski was destitute and entitled to benefits as a presumptive dependent pursuant to Code § 65.2–515(A)(4).[2]

On appeal, the commission affirmed with three separate opinions. After noting that the "issue of whether a parent is in destitute circumstances is determined at the time of death [of the employee]," Commissioner Diamond, writing for the commission, agreed with the deputy commissioner that unemployment benefits should not be included in determining dependency-destitute issues. Commissioner Diamond reasoned that unemployment benefits are "inherently temporary" and, as such, would defeat the purpose of awarding benefits to an indigent parent to ensure a reasonably comfortable livelihood not accompanied by contingencies and uncertainties. In addition, she found that "financial vulnerability is a major factor in determining destitute circumstances" and that Mrs. Mroczkowski was in fact "extremely vulnerable financially." Commissioner Diamond noted that without a driver's license and with only a high school education Mrs. Mroczkowski's job prospects were "not good." Finally, she concluded Mrs. Mroczkowski's lack of health insurance or any assets leave her "prone to financial disaster in the face of any major expense."

Commissioner Tarr, while disagreeing with Commissioner Diamond that unemployment benefits should not be included as income in the destitution analysis, concurred in the result, stating that this was "a close case" as to whether Mrs. Mroczkowski was in destitute circumstances.

Chairman Joyner dissented, finding that at the time of Martin's death, Mrs. Mroczkowski was not in destitute circumstances and her subsequent distress was a result of the expiration of her unemployment benefits and her failure to seek employment when she was "physically capable to do so." Chairman Joyner reasoned that, unlike other forms of public welfare assistance, unemployment benefits are status-based, applicable to the public at large regardless of their standard of

---

2. The deputy commissioner did not address Mrs. Mroczkowski's Code § 65.2–516 claim. Presumably this was because he had upheld her Code § 65.2–515(A)(4) claim.

living, and are available for the purpose of providing limited income for a fixed period of time during which other employment may be sought. In contrast, public welfare is a need-based program, and the "eligibility for these payments, in itself, is evidence bearing on one's living standard." Accordingly, Chairman Joyner concluded that Mrs. Mroczkowski's unemployment benefits should be counted as income to her and with that income she was not destitute at the time of Martin's death.

With respect to the question of partial dependency, Commissioner Diamond's opinion recites that the commission "agree[s] ... that the evidence of partial dependency is insufficient to support the claims of Linda Mroczkowski" under Code § 65.2–516.[3]

## II.

### APPLICABLE STANDARD OF REVIEW

Mrs. Mroczkowski asserts that the commission's determination that she was a parent in destitute circumstances is a finding of fact, reversible on appeal only if plainly wrong or without support in the evidence. We agree that findings of fact made by the commission are binding on appeal if they are supported by credible evidence. Code § 65.2–706; *Armstrong Furniture v. Elder*, 4 Va.App. 238, 247, 356 S.E.2d 614, 619 (1987). On appeal, we must view the evidence in the light most favorable to the prevailing party below, and "[t]he fact that contrary evidence may be found in the record is of no consequence if credible evidence supports the commission's finding." *Manassas Ice & Fuel Co. v. Farrar*, 13 Va.App. 227, 229, 409 S.E.2d 824, 826 (1991). We further recognize that findings concerning the status of presumptive dependents are factual determinations. *See Kelly v. Pendleton Constr. Co.,*

---

**3.** Although the deputy commissioner did not address Mrs. Mroczkowski's Code § 65.2–516 claim, we find implicit in this language that the commission, upon the facts before it, denied that claim. Accordingly, we will address the issue of that denial in this opinion.

182 Va. 191, 194, 28 S.E.2d 621, 623 (1944) (determination of wife's desertion of marriage abrogating dependency under predecessor statute was question of fact).

However, the principal issues raised by this appeal relate not to the factual findings of the commission, but to its application of the law to those findings. Accordingly, these issues are mixed questions of law and fact. *Cf. Franklin Mortgage Corp. v. Walker,* 6 Va.App. 108, 110, 367 S.E.2d 191, 192 (1988) (en banc) (finding that an injury arose out of and in the course of employment is a mixed question of law and fact). Accordingly, while we must defer to the factual findings of the commission with respect to Mrs. Mroczkowski's finances and work capacity, *cf. id.* at 110–11, 367 S.E.2d at 193, we review *de novo* the commission's application of the law to those findings in determining whether she was destitute.

## III.

## APPLICATION OF CODE § 65.2–515(A)(4)

### A.

## CONSIDERATION OF UNEMPLOYMENT BENEFITS AS INCOME

Code § 65.2–515 defines those persons who are conclusively presumed to be wholly dependent upon a deceased employee. Subsection (A)(4) provides that "[p]arents in destitute circumstances, provided there be no total dependents pursuant to other provisions of this section" are presumptive total dependents. The appellate courts of this Commonwealth have not determined previously whether unemployment benefits are to be included in the calculus for determining dependency and destitution under Code § 65.2–515. The commission, however, has consistently held that "welfare payments and other public assistance funds have always been excluded from dependency-destitution type [workers'] compensation cases." *Brandon v. Batchelder & Collins, Inc.,* 56 O.I.C. 39, 40 (1974); *see also Uber v. Bobo & Bango Coal Co.,* 157 Pa.Super. 412, 43 A.2d 385, 387 (1945) ("[p]ublic aid or assis-

tance is not a 'source of income or livelihood' under the compensation act"). In the present case, a majority of the commission determined that unemployment benefits differ from other forms of public assistance and should be considered as income in the dependency-destitution calculus. We agree.

The logic underlying excluding need-based welfare government benefits from the dependency-destitution calculus is that it prevents an employer from avoiding, at the taxpayers' expense, its statutory obligation to provide for the dependents of a deceased employee. A recipient of such need-based benefits may, through eligibility for workers' compensation survivor's benefits to which he or she would otherwise be entitled, leave the government allotment and reduce the burden on the general revenue. In addition, as properly noted by Chairman Joyner in the present case, eligibility and receipt of welfare benefits suggests a marginal standard of living and destitute circumstances and such benefits are payable, at present, without a time limitation. Thus, we believe the commission's prior decisions excluding welfare benefits as income in the dependency-destitute calculus are correct. An employer cannot assert that the presence of a government need-based safety net obviates its statutory responsibility to provide for the support of dependent survivors following the death of their breadwinner.

By contrast, unemployment benefits are *status-based* benefits, available to all eligible persons regardless of means or need. Again, as noted by Chairman Joyner, these benefits provide those who are unemployed, through no fault of their own, limited income for a period of time during which they can seek other employment. In addition, because there is no possibility that such benefits will terminate as a result of the recipient receiving an award of workers' compensation survivor's benefits, their exclusion from the dependency-destitution calculus renders no benefit to the taxpayers and conveys no unwarranted benefit on the employer. Accordingly, other jurisdictions have elected to include such status-based benefits in determining eligibility for workers' compensation survivor's

benefits. *See, e.g., Byrd v. Industrial Commission,* 658 P.2d 274, 275–76 (Colo.Ct.App.1982) (mother who was receiving unemployment benefits at time of son's death was not entitled to benefits). Moreover, the inclusion of unemployment benefits in the calculus will not *per se* defeat a claim of destitution or actual dependency. *Cf. Haller v. Workmen's Compensation Appeal Bd.,* 153 Pa.Cmwlth. 149, 620 A.2d 657, 659 (1993), *appeal denied,* 538 Pa. 675, 649 A.2d 677 (1994) (mother was not barred from proving dependency on son despite having received a settlement for her own work-disabling injury).

For these reasons, we hold that unemployment benefits, unlike welfare benefits, are to be considered as income for purposes of a destitution determination under Code § 65.2–515(A)(4).

## B.

### TIMING OF DETERMINATION

■ The commission expressly made its determination regarding the issue of destitution under Code § 65.2–515(A)(4) "at the time of [Martin's] death." We recognize, as Mrs. Mroczkowski asserts, that this subsection contains no express language as to the time of determination of destitution, whereas subsections (A)(1) and (A)(2) require that a spouse should not have "voluntarily deserted or abandoned [the employee] at the time of the accident" and be actually dependent on the employee at that time. We believe the commission properly used the time of death of the employee for its determinations. Code § 65.2–515 provides for survivor's benefits and has no application other than where an employee is killed in a compensable accident. Accordingly, *for purposes of this Code section* the time of the accident and the time of death are the same. *See Virginia Elec. & Power Co. v. Place,* 150 Va. 562, 569, 143 S.E. 756, 759 (1928) (holding that dependency under a former code section is to be determined upon existing facts "at the time of death" of the employee); *Tharp v. City of Norfolk,* — Va.App. —, —, 454 S.E.2d 13, 15–16 (1995) (relating wife's claim under subsection (A)(1) to time of death of the

employee-husband); *see also Dunn v. Industrial Commission,* 177 Ariz. 190, 197, 866 P.2d 858, 865 (1994) (treating death as the injury).

Mrs. Mroczkowski nevertheless asserts that later events may be considered "to demonstrate that [her] financial vulnerability ... existed as of the date of death [of Martin]." She asserts that, as her unemployment benefits were limited in scope and her ability to find employment is limited by her medical condition, education and lack of a driver's license, the commission properly considered her actual and potential financial circumstances rather than her personal and financial circumstances as of the date of Martin's death. The thrust of Mrs. Mroczkowski's assertion is that, at the time of Martin's death, and in fact at the time of the hearing before the deputy commissioner, the evidence established that her unemployment benefits would terminate approximately one month after Martin's death and, thus, she was destitute at the time of Martin's death because she was financially vulnerable at that time.

Although the commission used the concept of financial vulnerability as "a major factor in determining destitute circumstances," neither party has cited a Virginia appellate decision supporting that concept, and we have found none. Nevertheless, we believe the concept is sound, consistent with the humane purpose of our Workers' Compensation Act, and based upon common sense and the realities of human experience. Thus, we agree that where *the evidence viewed at the time of the employee's death* establishes that a claimant for survivor's benefits has only the earning potential sufficient to provide no more than a bare existence with no resources to provide against reasonably anticipated or inevitable financial emergencies, such a claimant is properly determined to be financially vulnerable and, thus, destitute for purposes of the Code § 65.2–515(A)(4) analysis. *See generally Covey v. Suburban Masonry,* 70 O.I.C. 184 (1991).

Although the concept of financial vulnerability involves a current circumstance that contemplates a future negative

event, it does not include future events that are speculative or uncertain as determined at the time of death of the employee. Virginia is apparently alone among the states in permitting parents in destitute circumstances to claim *presumptive* status as dependents under our workers' compensation law.[4] This provision compliments Code § 20-88, which requires adult children to provide support to a parent in "necessitous circumstances;" necessitous circumstances are defined as "living in or characterized by poverty ... narrow, destitute, pinching, pinched." *Mitchell–Powers Hardware Co. v. Eaton*, 171 Va. 255, 262, 198 S.E. 496, 499 (1938).

However, just as Code § 20-88 could not bind the estate of a deceased child to retain assets for the prospective need of a surviving parent, Code § 65.2-515(A)(4) ought not require an employer to await the possible destitution of a parent of a deceased employee. This interpretation not only provides repose to the employer, but also assures that beneficiaries of lesser entitlement will not have their benefits denied on the ground that a superior beneficiary has a potential claim. *See* Code § 65.2-512(C) (partial dependents cannot receive benefits if a superior total dependent is entitled to benefits).

For these reasons, we hold that where a parent asserts financial vulnerability, as opposed to present actual destitution, as a basis for an award of survivor's benefits as a destitute parent under Code § 65.2-515(A)(4), the evidence must establish that at the time of death of the employee, the parent faced a definite future event or one reasonably predictable that would place the parent in destitute circumstances. To hold otherwise would provide a disincentive to the parent to maximize ability and to conserve resources in an effort to avoid the effects of the alleged vulnerability.

---

4. As a general rule, parents must prove actual dependency, *see, e.g., Maryland Casualty Co. v. Rowe*, 256 Ark. 221, 506 S.W.2d 569, 572 (1974); *Lighthill v. McCurry*, 175 Neb. 547, 122 N.W.2d 468, 471 (1963), although a minority of jurisdictions include parents generally in a *de jure* hierarchical class of beneficiaries presumed to be dependent under an heirship theory. *See, e.g., Gayler v. Renfro*, 576 S.W.2d 911, 913 (Tex.Civ.App.1979).

## C.

## MRS. MROCZKOWSKI'S CASE

■ We now consider, upon the facts as determined by the commission, whether Mrs. Mroczkowski established that she was a parent in destitute circumstances at the time of Martin's death, including in our calculus the fact that she was receiving unemployment insurance benefits at that time. We have previously held that the determination of whether a parent is in destitute circumstances depends on various factors, including earnings or *earning potential,* amount of assets, health, age, level of formal education, and number of dependents. *See Kim v. Sportswear,* 10 Va.App. 460, 469, 393 S.E.2d 418, 423–24 (1990) (mother with no independent income, assets or formal education deemed to be destitute); *see also Eaton,* 171 Va. at 262, 198 S.E. at 499 (" '[d]estitute' has been defined . . . as 'not possessing the necessities of life; in a condition of extreme want; without possessions or resources' "); *cf. People v. Briggs,* 50 Misc.2d 1062, 272 N.Y.S.2d 211, 213 (N.Y.Crim. Ct.1966) (destitution defined as being, or likely to become a public charge); *State v. Brown,* 259 Minn. 284, 107 N.W.2d 47, 48 (1961) (destitution requires economic need, but the individual need not be on the verge of actual starvation or harm by exposure or disease).

Here, the record shows that at the time of Martin's death, Mrs. Mroczkowski's unemployment benefits and additional assets exceeded her expenses and liabilities. The record further shows that, while limited to certain types of work, she had in the past been capable of earning an adequate income and possessed vocational skills permitting her to pursue a career. In addition, when viewed at the time of Martin's death, the evidence does not establish that she was in financially vulnerable circumstances. At that time, nothing in the record supports a determination that she could not, in fact, secure employment. Moreover, Mrs. Mroczkowski had substantial funds in savings to draw on. Although these were intended as a retirement fund, it is clear that she could, and in fact did, draw on these assets for support. Thus, the period

over which she could have obtained employment and realized her earning potential extended well beyond the date that her unemployment benefits expired.

The commission should have disregarded circumstances as they actually occurred and focused upon the circumstances at the time of Martin's death. At that point in time it was neither definite nor reasonably predictable that Mrs. Mroczkowski would be unable to find employment adequate to meet her needs. Accordingly, we hold that the record does not support a finding that Mrs. Mroczkowski was in destitute circumstances at the time of Martin's death. For these reasons, we reverse the commission's award of survivor's benefits to Mrs. Mroczkowski as a presumptive dependent of her son.

## IV.

### DETERMINATION OF INELIGIBILITY AS PARTIAL DEPENDENT

█ Mrs. Mroczkowski further asserts that the commission erred in finding that she was not, in the alternative, partially dependent on Martin, entitling her to partial benefits pursuant to Code § 65.2–516. We disagree. Code § 65.2–516 provides that "questions of [non-presumptive] dependency in whole or in part shall be determined in accordance with the facts as the facts are at the time of the accident; but no allowance shall be made for any payment made in lieu of board and lodging or services." We interpret the phrase "payment made in lieu of board and lodging or services" to mean payments the employee would have made to other persons if these necessities were not provided by the alleged dependent. *See Miller & Long Co. v. Frye,* 215 Va. 591, 594, 212 S.E.2d 258, 260 (1975).

█ Martin provided his mother with approximately $400 per month in cash and performed various household duties for her. In exchange, he and Ms. Krol received room, board and other services from Mrs. Mroczkowski. As in *Frye,* the relationship was one of mutual assistance and not unilateral

reliance by Mrs. Mroczkowski on her son. *Id.* Accordingly, the commission properly found that Mrs. Mroczkowski was not entitled to benefits as a partial dependent of her son.

In sum, we affirm the majority position of the commission that unemployment benefits are income for purposes of a dependency-destitution calculus, but reverse the plurality finding, arrived at by two commissioners under differing applications of that calculus, that Mrs. Mroczkowski was a parent in destitute circumstances. Finally, we affirm the unanimous position of the commission that Mrs. Mroczkowski was not entitled to benefits as a partial dependent of her son. The commission is directed to enter an order consistent with this opinion.

*Affirmed in part, reversed in part, and remanded.*