COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Fitzpatrick, Judges Benton, Coleman,
          Willis, Elder, Bray, Annunziata, Overton, Bumgardner
          and Lemons
Argued at Richmond, Virginia


FAIRFAX COUNTY SCHOOL BOARD
                                      OPINION BY
v.    Record No. 1700-97-4    CHIEF JUDGE JOHANNA L. FITZPATRICK
                                      JANUARY 26, 1999
ELLEN M. ROSE

                    UPON A REHEARING EN BANC

        FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

          Michael N. Salveson (Hunton & Williams, on
          brief), for appellant.

          Michael E. Canode for appellee.


     Fairfax County School Board ("employer") appealed the

Workers' Compensation Commission's decision granting the change

in condition application of Ellen M. Rose ("claimant").  Employer

contended the commission erred in:  (1) finding that claimant

effectively cured her prior unjustified refusal of necessary

medical attention; (2) finding that claimant timely cured her

prior refusal of medical care; and (3) relying upon an

unpublished opinion of this Court.

     In Fairfax County Sch. Bd. v. Rose, 27 Va. App. 587, 500

S.E.2d 273 (1998), a divided panel of this Court reversed the

commission's award of benefits and remanded the case.  We granted

rehearing en banc, and upon rehearing, we affirm the commission's

decision.  We hold that:  (1) for a verbal cure of unjustified

refusal of medical care to be effective, it must be made in good

faith, and (2) claimant's letter informing employer of her willingness to undergo surgery was made in good faith and cured her prior unjustified refusal of medical treatment.

## I.

On March 20, 1991, claimant sustained an injury by accident to her back in the course of her employment. Employer accepted the resulting claim as compensable and paid temporary total disability benefits of $307.94 per week beginning March 28, 1991, pursuant to the commission's award entered September 12, 1991.

Claimant's treating physician, Dr. James W. Preuss, and several consulting physicians recommended as early as September 1991 that claimant undergo back surgery to repair two herniated lumbar discs. Claimant refused the surgery. In July 1993, a functional capabilities evaluation revealed that claimant was unable to perform any type of work activity and had significant difficulty with ordinary tasks of daily living. In his answers to interrogatories filed November 2, 1993, Dr. Preuss stated that back surgery was the most reasonable and effective form of treatment for claimant's herniated discs and that if claimant were willing to undergo the surgery, Dr. Preuss would so recommend. He further stated that, with surgery, claimant had a good probability of returning to her regular work.

By the deputy commissioner's opinion of June 27, 1994, effective November 7, 1993, the claimant's disability benefits were suspended on the ground that claimant unjustifiably refused

recommended back surgery. The deputy commissioner found that surgery was reasonable and necessary medical care for claimant's herniated discs. The commission and this Court dismissed claimant's procedurally defective appeals of that decision, and the deputy commissioner's decision became final.

In July 1994, claimant attempted suicide and was hospitalized and treated for depression. After her release, she was placed on medication that affected her memory and restricted her ability to function. Claimant also suffered from agoraphobia, which limited her ability to go out in public. She was treated for these conditions by a psychiatrist and a licensed clinical social worker from 1994 through 1996.

On November 6, 1995, claimant filed two applications for hearing seeking reinstatement of compensation. One was denied and is not before this Court. The second application alleged a change in condition and sought reinstatement of benefits as of November 6, 1995 and continuing, on the ground that she was willing to submit to surgery by Dr. Preuss, the physician treating her back injury. In addition, claimant's counsel notified counsel for employer by letter that "Ms. Rose is now willing to undergo the lumbar surgery proposed by Dr. Preuss. Please contact me regarding the scheduling of an appointment with Dr. Preuss."

On February 29, 1996, claimant kept an appointment with Dr. Preuss and declared her willingness to have surgery. In

supplemental interrogatories filed on August 1, 1996, Dr. Preuss stated that he discussed surgery with claimant in February 1996 but that he did not recommend surgery at that time because of her stable condition. In his deposition, Dr. Preuss explained that claimant's condition was "stable" because she had not exhibited any worsening of her neurological condition since 1992. He testified that, in any case where the patient's neurological examination is stable and the patient is willing to tolerate the level of pain and incapacity, he would not recommend surgery and would regard it as an elective procedure. Dr. Preuss stated that claimant's inability to work played no part in his recommendation regarding surgery. Dr. Preuss acknowledged that if claimant were willing to undergo surgery her symptons would improve.

After a hearing on July 9, 1996, the deputy commissioner found that claimant failed to cure her unjustified refusal before November 6, 1995. Consequently the issue became whether her November 6 application and letter to employer's counsel stating that she was willing to undergo surgery constituted a timely and effective cure. Finding that "claimant was only required to cease her unwillingness and refusal to undergo surgery," the deputy commissioner concluded that claimant's counsel's letter of November 6, 1995 effectively cured her earlier unjustified refusal of medical treatment within the statutory time limit.

On review, the full commission determined that "the main issue [was] . . . whether the applications and letter of November

- 4 -

6, 1995, effectively cured the claimant's refusal of the recommended surgery." While noting its own decision in Lester v. Northern Mineral Corp., 64 O.I.C. 203 (1985), the commission relied on the unpublished opinion of this Court in Bane v. Rosslyn Concrete Constr. Co., No. 2598-92-4, 1994 WL 43332 (Va. Ct. App. Feb. 15, 1994). The commission concluded the following:

> In this case, the claimant has cured her prior refusal of medical treatment. She was seen by Dr. Preuss on February 29, 1996, and on July 23, 1996, she indicated her willingness to go forward with surgery. The claimant has done all that she can do until surgery is scheduled. . . . Based on a review of the evidence before us, we find that she has cured her refusal of surgery, if it is still recommended, and that benefits were properly reinstated.

## II.

On appeal, employer contended claimant failed to timely cure her prior unjustified refusal of medical care. A divided panel of this Court agreed and reversed the commission's decision. Upon rehearing en banc, we hold that claimant timely cured her prior unjustified refusal of medical care.

Code § 65.2-708(A) provides: "[O]n the ground of a change in condition, the Commission may review any award and on such review may make an award ending, diminishing or increasing the compensation previously awarded." However, "[n]o such review shall be made after twenty-four months from the last day for which compensation was paid." Code § 65.2-708(A). In the instant case, claimant was last paid compensation for the period

ending November 7, 1993. Code § 65.2-708 terminated her right to continued disability compensation unless she cured her prior unjustified refusal of medical treatment by November 7, 1995.

Claimant failed to cure her unjustified refusal of medical care prior to November 6, 1995. The sole issue before us is whether claimant's November 6, 1995 letter informing employer of her willingness to undergo surgery cured her prior unjustified refusal of medical treatment. This issue presents a mixed question of law and fact and may be reviewed de novo by this Court. See Roanoke Belt, Inc. v. Mroczkowski, 20 Va. App. 60, 68, 455 S.E.2d 267, 271 (1995).

The effectiveness of a cure by words alone, a "verbal cure,"[1] in the context of an unjustified refusal of medical treatment, is an issue of first impression. However, in the analogous area of the cure of a refusal of selective employment or vocational rehabilitation, we have held that a verbal cure is effective if it is made in good faith. See Christiansen v. Metro Bldg. Supply, Inc., 18 Va. App. 721, 724, 447 S.E.2d 519, 521 (1994), aff'd on reh'g, 19 Va. App. 513, 453 S.E.2d 302 (1995) (refusal of selective employment may be cured by claimant's offer to accept the previously refused employment if made "in good faith"); James v. Capitol Steel Constr. Co., 8 Va. App. 512, 518,

---

[1]A "verbal cure" is a statement indicating willingness to cure which is unaccompanied by curative action. A verbal cure may be spoken, see James v. Capitol Steel Constr. Co., 8 Va. App. 512, 518, 382 S.E.2d 487, 490 (1989), or written, as in the instant case.

382 S.E.2d 487, 490 (1989) ("[a]ssuming that the refusal to cooperate with vocational rehabilitation could be cured by a verbal statement of willingness to cooperate . . . it must be made in good faith"); Thompson v. Hampton Institute, 3 Va. App. 668, 671, 353 S.E.2d 316, 317 (1987) (claimant may cure refusal of selective employment when he "in good faith advises his employer that he is willing to accept such work").

We have "historically treated and discussed [these similar areas] in conjunction with one another," Hercules, Inc. v. Carter, 13 Va. App. 219, 223, 409 S.E.2d 637, 639 (1991), aff'd on reh'g en banc, 14 Va. App. 886, 419 S.E.2d 438 (1992), and we now hold that for a verbal cure of an unjustified refusal of medical care to be effective, it must be made in good faith. A claimant must demonstrate his or her good faith through an affirmative action or a showing of circumstances mitigating the failure to act.[2]

_____

[2]Although we are not bound by the decisions of the commission, our holding is consistent with the commission's cases, which, although they do not focus on a finding of good faith, do require affirmative action of the claimant in the absence of mitigating factors. See Smith v. Kershaw Automotive, No. 153-36-02 (Workers' Comp. Comm'n Aug. 24, 1994) (claimant's letter to employer's counsel stating his willingness to accept selective employment, absent mitigating circumstances, failed to cure prior refusal); McLaughlin v. Manville Sales Corp., 73 O.W.C. 185, 186 (1994) ("We have consistently held that something more than a mere statement of willingness to cooperate is required. The claimant must take some affirmative action . . . demonstrating his willingness to cooperate [with vocational rehabilitation]."); Hughes v. Fred Dehner Sawmill, Inc., No. 147-60-14 (Workers' Comp. Comm'n July 12, 1993) (claimant's refusal to submit to an independent medical examination while appeal was pending was cured by his written agreement to submit to the exam if the outcome of the appeal required it); Lester v.

Under the circumstances presented, we hold that claimant's letter of November 6, 1995, combined with the mitigating factors hereinafter described, effected a cure of her prior unjustified refusal of medical treatment. Clearly claimant's mental conditions of depression and agorophobia constituted mitigating circumstances which explained any delay in contacting Dr. Preuss. While it would have been preferable for claimant to have seen Dr. Preuss on November 7, 1995 rather than February 29, 1996, her actions constituted the requisite good faith necessary to accomplish the verbal cure. At her later appointments with Dr. Preuss on February 29, 1996 and July 23, 1996, claimant reaffirmed her willingness to have the surgery, but, in light of her stable condition, Dr. Preuss no longer recommended it. Claimant's psychological condition and her statements to her treating physician, that she was willing to submit to surgery if it was still recommended, were affirmative actions which reinforced that her November 6, 1995 statement was made in good faith. We hold that claimant timely and effectively cured her prior refusal of medical care and, accordingly, affirm the commission.[3]

Northern Mineral Corp., 64 O.I.C. 203, 205 (1985) ("The Commission has regularly held that, in the absence of other mitigating factors, suspension of benefits for refusal of medical or physical rehabilitation training services will continue until a claimant actually meets with a physician or counselor and cures a refusal.").

[3]Employer also contends the commission erred in relying on an unreported decision, Bane v. Rosslyn Concrete Constr. Co., No. 2598-92-4, 1994 WL 43332 (Va. Ct. App. Feb. 15, 1994). See Code

<u>Affirmed.</u>

---

§ 17.1–413(A), recodifying § 17–116.010(A).  Although an unpublished opinion of the Court has no precedential value, <u>see</u> <u>Grajales v. Commonwealth</u>, 4 Va. App. 1, 2 n.1, 353 S.E.2d 789, 790 n.1 (1987), a court or the commission does not err by considering the rationale and adopting it to the extent it is persuasive.  Accordingly, the commission did not err in considering our decision in <u>Bane</u>.

Coleman, J., with whom Bray and Lemons, JJ., join, dissenting.

Code § 65.2-603, which requires an employer to provide necessary medical attention to an employee injured in an industrial accident, also provides that when the employee unjustifiably refuses to accept such medical services the employee shall be barred "from further compensation until such refusal ceases and no compensation shall at any time be paid for the period of suspension."  Code § 65.2-603(B).  The medical attention that is necessary to restore an employee's good health is part of the compensation to which an injured employee is entitled but it also serves the desirable purpose for both the employee and employer of enabling the employee to return to useful employment when reasonably possible.  Richmond Mem. Hosp. v. Allen, 3 Va. App. 314, 318, 349 S.E.2d 419, 422 (1986).

An injured employee, who is entitled to compensation benefits from his employer, including medical benefits, may not elect to remain disabled at the expense of his or her employer when reasonable medical treatment would cure or correct the disability and enable the person to become a productive employee.  See Davis v. Brown & Williamson Tobacco Co., 3 Va. App. 123, 348 S.E.2d 420 (1986) (holding that the "unjustified refusal" provision is "to penalize" employees who unjustifiably refuse reasonable and necessary medical attention).  Here, the commission held on November 7, 1993, that Ellen Rose unjustifiably refused medical treatment by refusing to have disc

surgery recommended by her attending physician which, according to his opinion, would correct her work-related disability. Accordingly, the commission suspended Ellen Rose's benefits and that decision has been final and binding and remained in effect since November 7, 1993.

On November 6, 1995, the day before Ellen Rose's claim for further benefits would have been barred by Code § 65.2-708, she filed a change of condition application stating that she was now willing to have the corrective disc surgery. In support of her application she proved that her counsel had sent a letter to employer's counsel stating that Ms. Rose was willing to undergo the lumbar surgery and requesting that they confer to arrange an appointment with her treating physician, Dr. Pruess. Rose contends, and the majority has held, that her stated willingness to have the surgery cured her unjustified refusal and that compensation benefits, which had been suspended for two years, should be reinstated. The commission found that Ellen Rose's stated willingness to undergo the surgery was a "verbal cure" of her unjustified refusal and that the two appointments that she arranged with Dr. Pruess were affirmative acts that corroborated her good faith. The majority of this Court holds that credible evidence supports that finding.

I disagree with that holding. The affirmative acts upon which both the commission and this Court rely to prove that Ellen Rose's stated willingness to have surgery was bona fide were two

appointments she had with Dr. Pruess.  However, what is significant about the two appointments with Dr. Pruess is, as his deposition establishes, that Ellen Rose did not and does not intend to have the surgery which would correct her work-related disability but rather intends to live with the pain.  In my opinion, the majority errs by merely considering the fact that Rose made appointments with Dr. Pruess as affirmative acts proving her good faith, without considering what transpired at the appointments.  Because Dr. Pruess's deposition proves unequivocally that Rose did not schedule surgery and does not intend to have surgery, but rather intends to live with the pain, no credible evidence proves that Rose had a bona fide willingness to have surgery.  Because I would find that no credible evidence supports the commission's finding that Rose cured her unjustified refusal of medical treatment, I respectfully dissent.

As the majority notes, whether Rose cured her unjustified refusal is a mixed question of law and fact.  See Roanoke Belt, Inc. v. Mroczkowski, 20 Va. App. 60, 68, 455 S.E.2d 267, 271 (1995).  The factual component of the question requires a determination by the commission of Rose's state of mind and whether her stated willingness to have surgery was in good faith.  But, we review de novo whether credible evidence exists in the record to support the commission's finding.

Clearly, the standard of review by this Court is high.  Unless the evidence in the record is insufficient, as a matter of

law, to sustain her burden of proof that she cured her unjustified refusal of medical treatment by a good faith willingness to have the surgery, then the commission's finding is binding and conclusive. Code § 65.2-706; Tomko v. Michael's Plastering Co., 210 Va. 697, 699, 173 S.E.2d 833, 835 (1970).

As previously noted, an injured employee cannot refuse to accept reasonable medical services that will enable the employee to return to productive employment. Code § 65.2-603. In order to cure an unjustified refusal of medical treatment, an employee must accept the corrective medical treatment and may do so, as the majority holds, by a "verbal cure" provided the statement demonstrates a good faith willingness by the employee to accept the surgery. The majority holds, and I concur with that holding, that good faith can be shown "through an affirmative action or a showing of circumstances mitigating the failure to act." For purposes of this opinion, I accept the commission's finding and the majority's upholding that Rose's depression and agoraphobia constituted mitigating circumstances explaining her delay in contacting Dr. Pruess for further medical treatment. However, the record is clear, in my opinion, that in order to cure her unjustified refusal of medical treatment she must be willing to have disc surgery, and Rose did not and does not intend to have the corrective surgery. Dr. Preuss's deposition establishes that although the surgery would improve her symptoms, Rose does not plan to have the surgery because her condition is "stable" and

she can tolerate the pain.  The fact that surgery may not be a medical necessity from the doctor's point of view does not relieve Rose of the responsibility of accepting reasonable medical treatment that will alleviate these problems that cause the work-related disability.  Although Rose may have other unrelated emotional or psychological disabilities that prevent her from returning to her previous employment, she cannot elect to have her work-related disability go untreated in order to receive compensation benefits from her employer.

While contacting Dr. Pruess and arranging the belated appointments with him in February and July could, under some circumstances, be "affirmative actions" that show good faith, where the result of those appointments is that surgery was not scheduled because Rose was willing to "live with the pain" the evidence fails to prove that she was willing to have surgery. The question for Rose is not whether surgery is a medical necessity, but whether surgery is a reasonable treatment that would correct her disability.  It is not sufficient, as the majority apparently holds, that she is now willing to accept surgery as a course of treatment merely because she scheduled the appointments; the result of those "affirmative acts" proved that Rose continued to elect to live with the pain rather than accept surgery.

I would reverse the commission's finding and hold that no credible evidence proves that Rose's "verbal cure" was in good

faith; to the contrary, the evidence proves she had no intention to accept the medical treatment.